69 F.3d 1523
 67 Empl. Prac. Dec. P 43,828, 104 Ed. Law Rep. 1004
 Bernadette REYNOLDS, Plaintiff-Appellant,
v.
SCHOOL DISTRICT NO. 1, DENVER, COLORADO, named as: School
District No. 1, City and County of Denver; School District
No. 1, Board of Education, named as: Board of Education of
School District No. 1, City and County of Denver; Jo
Thomas, Lino Gonzales, Leroy Lopez, Defendants-Appellees.
 No. 94-1009.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 13, 1995.
 
 Steven L. Janssen, Boulder, Colorado, for Plaintiff-Appellant.
 Patrick B. Mooney (Michael Hodges Jackson with him, on the brief), Semple & Jackson, Denver, Colorado, for Defendants-Appellees.
 Before BRORBY and EBEL, Circuit Judges, and CAMPOS, District Judge.*
 EBEL, Circuit Judge.
 
 
 1
 Plaintiff-Appellant Bernadette Reynolds ("Reynolds") brought this reverse discrimination action against Denver Public School District No. 1, the Board of Education, and three school administrators (collectively "Defendants") under various federal civil rights statutes and Colorado law. Reynolds, a white bilingual education teacher in the Denver Public School system, claims that Defendants discriminated against her in various promotion and other employment decisions because of her race. Specifically, Reynolds maintains that Defendants violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. Sec. 1981, 42 U.S.C. Sec. 1983, and Colorado contract and tort law. The district court dismissed four of Reynolds' six claims pursuant to Fed.R.Civ.P. 12(b)(6), and then granted summary judgment for Defendants on Reynolds' remaining federal employment discrimination and state breach of contract claims. Reynolds appealed these rulings, and we now affirm.
 
 I. BACKGROUND
 
 2
 Reynolds has been a teacher with the Denver Public Schools ("DPS") since 1968. Until the fall of 1988, she taught primarily social studies and Spanish, and then became a teacher on special assignment ("TOSA") in the bilingual education department. According to Reynolds, the TOSA assignment generally serves as a stepping-stone to administrative positions in the school system. However, when Reynolds applied for a series of administrative jobs from 1989 to 1992, she was not selected for any of the promotions. She maintains that Defendants discriminated against her because she is white, and refused to promote her even though she was the most qualified applicant for the various positions.
 
 
 3
 The record before us reveals four specific instances where the school district denied Reynolds promotions. First, in 1989, Reynolds applied to become a middle school assistant principal.[1] Reynolds interviewed for the position and was placed into a pool out of which principalship vacancies would be filled. Reynolds believed that the school district placed virtually everyone in the pool into a principalship position except for her. However, the DPS Executive Director of Personnel Services explained that the school district placed only four of the eight persons in the applicant pool.
 
 
 4
 Second, in 1990 Reynolds applied for the position of Director of Bilingual/ESOL Education. The interviewing committee that evaluated the candidates for the position ranked Defendant Jo Thomas ("Thomas"), a Hispanic, above Reynolds. Based on a Superintendent's report, the Board of Education officially awarded Thomas the job on November 15, 1990, making her Reynolds' immediate supervisor. To support her reverse discrimination claim, Reynolds relates that Dr. Evie Dennis, the Superintendent of Schools, told her that the Director position needed to be filled by a Hispanic to satisfy the Hispanic community.
 
 
 5
 Third, Reynolds applied to become Supervisor of Secondary Personnel in 1991. Again, the school district declined to promote Reynolds, selecting Sue Koscove, a white woman, for the position in November 1991.
 
 
 6
 Fourth and finally, Reynolds applied for the position of Coordinator in the Bilingual/ESOL Department in August 1992. No one held the Coordinator position at the time Reynolds applied. Defendants never filled the position and subsequently eliminated it altogether. Defendants assert that they chose to leave the position vacant and later eliminate it because of anticipated budget cuts.[2] Reynolds claims that they eliminated the position under the pretext of budgetary concerns to keep her from becoming Coordinator once they realized that she was the most qualified applicant for the job.[3] Reynolds cites as evidence of pretext the fact that the Bilingual/ESOL department budget increased from $1,733,559 in fiscal year 1992-1993 to $1,775,044 for fiscal year 1993-1994. Reynolds further highlights that she was the sole white person working in the Bilingual/ESOL Department, and that all administrative personnel are currently Hispanic.
 
 
 7
 Following Reynolds' failed attempts to secure an administrative promotion, she claims that Defendants constructively discharged her from her TOSA position. The purported discharge took place on December 2, 1992, when Reynolds became involved in a dispute with Thomas, her supervisor, about an assignment given to Reynolds that she felt should have been given to Augustine Lopez instead of her.[4] Thomas instructed Reynolds in a memo to compile data on the number of students in bilingual/ESOL programs in the various high schools and middle schools in the district to assist in determining whether staff changes would be needed for the semester. Reynolds responded with a memo to Thomas stating that she believed Augustine Lopez should compile the data for those schools for which she understood him to be responsible. Thomas then sent Reynolds a second memo informing her that Augustine Lopez was busy on another project, that Reynolds should have the numbers and formulae readily accessible, that she had performed this task in the past, and that the assignment should not be difficult for Reynolds to complete. Reynolds nevertheless felt that Thomas' decision that she compile data on all of the schools was inappropriate, and went to talk to Thomas. Thomas repeated that Reynolds should do the assignment, Reynolds refused to sign the memo outlining the assignment, and a confrontation ensued in which Thomas told Reynolds to stop yelling at her and Reynolds responded that she was not yelling.
 
 
 8
 Thomas then left to report the incident to a more senior school administrator. After some time passed, Thomas went to Reynolds' office and asked her if she was going to do the assignment. Reynolds answered that she wanted to speak to her attorney first, and after she spoke with him, Thomas asked her to come to her office. Reynolds called her attorney again because she suspected she was being called into a disciplinary meeting. Lino Gonzales ("Gonzales"), an administrator of School District 1, then asked her to come to Thomas' office, and Reynolds ultimately went into Thomas' office. Reynolds, Defendant Leroy Lopez ("Lopez"), Associate Superintendent of School District No. 1, Gonzales, Thomas, and Director of Security Gil Shannon attended the disciplinary meeting. Defendants then placed Reynolds on paid administrative leave for insubordination pending an investigation of the incident.[5] Ultimately, on January 9, 1993, Defendants terminated Reynolds as a TOSA and reassigned her to a classroom teaching position with no loss of pay or benefits. Reynolds claims that the reassignment constituted a demotion because it lowered her prospects for future promotion and because a classroom teaching position was less prestigious.
 
 
 9
 Based on these events, Reynolds filed a grievance on January 4, 1993 with the Denver Classroom Teachers Association, as provided for by the collective bargaining agreement governing her employment. In her grievance, Reynolds complained about being placed on administrative leave, claimed that such action violated the collective bargaining agreement, and alleged that she was being discriminated against generally in promotion and other matters because she was white. Following an initial conference, Reynolds amended her grievance to charge also that the grievance procedure itself had not been properly followed, and that her supervisors had assigned her to a classroom teaching position in reprisal for filing her grievance and in violation of the collective bargaining agreement. After proceeding through a "Level III" arbitration hearing, the arbitrator dismissed Reynolds' grievance.
 
 
 10
 Prior to her grievance and reassignment, Reynolds filed the present action in federal district court on December 21, 1992, alleging six causes of action under federal and state law and requesting declaratory, injunctive, and monetary relief. Specifically, Reynolds claimed (1) denial of equal employment and promotional opportunities due to her race in violation of Title VI of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. Secs. 2000d to 2000d-7, 42 U.S.C. Sec. 1981, and 42 U.S.C. Sec. 1983; (2) breach of contract; (3) negligent supervision by the School District No. 1 and the Board of Education of Thomas, Gonzales, and Lopez; (4) denial of due process and equal protection based on Defendants' failure to follow EEOC guidelines in violation of 42 U.S.C. Sec. 1983; (5) intentional interference with prospective financial advantage; and (6) engagement in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Secs. 1961-68. Defendants moved to dismiss the negligent supervision, Sec. 1983 EEOC guidelines, intentional interference, and RICO claims. Reynolds concurred in the dismissal of her RICO claim, and the district court granted Defendants' motion to dismiss the other claims. Following completion of discovery, Defendants then moved for summary judgment on the discrimination and breach of contract claims. The district court granted Defendants' motion, and Reynolds brought the instant appeal.
 
 II. FEDERAL CIVIL RIGHTS CLAIMS
 
 11
 Reynolds charges that Defendants denied her equal employment opportunities because of her race in violation of her rights under Title VI, Sec. 1981, and Sec. 1983 by discriminatorily (1) failing to promote her; (2) constructively discharging her from the TOSA position; and (3) demoting her to a classroom teaching job. In rejecting these claims and granting Defendants' motion for summary judgment, the district court first found that Reynolds failed to make the threshold showing required for a Title VI claim that Defendants received federal financial assistance for the primary purpose of providing employment. Second, the court ruled that the applicable statute of limitations barred any potential discrimination claims based on the decisions not to promote Reynolds to the assistant principal or Director of Bilingual/ESOL Education positions. As to those claims not barred by the statute of limitations, the court concluded that Reynolds' failed to establish that Defendants intentionally discriminated against her and consequently rejected her Sec. 1981 claim.[6] Finally, the court found, as a matter of law, that Reynolds failed to provide evidence that Defendants constructively discharged her and that Reynolds failed to state a claim based on her purported demotion.
 
 
 12
 We review the district court's grant of summary judgment de novo. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc. 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We construe the factual record and all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment, Blue Circle Cement, Inc. v. Board of County Comm'rs, 27 F.3d 1499, 1503 (10th Cir.1994)--in this case, Reynolds. However, once Defendants showed that they were entitled to summary judgment, it became Reynolds' burden as the nonmovant to set forth specific facts demonstrating that there was a genuine issue for trial as to those material matters for which she carried the burden of proof. See Applied Genetics, 912 F.2d at 1241. Applying these standards, we hold that Reynolds failed to establish a genuine dispute of a material fact and that Defendants were entitled to judgment as a matter of law. Accordingly, we affirm the judgment of the district court.
 
 A. Title VI
 
 13
 Title VI prohibits discrimination on the basis of race, color, or national origin in any program or activity receiving federal financial assistance. 42 U.S.C. Sec. 2000d. That prohibition extends to discrimination in employment by programs or activities that receive federal funding; however, covered entities can only be sued for employment discrimination "where a primary objective of the Federal financial assistance [to that program or activity] is to provide employment." 42 U.S.C. Sec. 2000d-3;[7] see also Johnson v. Transportation Agency, Santa Clara County, Cal., 480 U.S. 616, 627 n. 6, 107 S.Ct. 1442, 1449 n. 6, 94 L.Ed.2d 615 (1987) (noting Congress' concern that Title VI not subsume Title VII by making any employer who receives federal financial assistance liable under Title VI).[8] Thus, to sustain her Title VI claim Reynolds must show that Defendants received federal funds for a primary objective of providing for employment. We conclude that Reynolds has failed to make such a showing.
 
 
 14
 Reynolds argues that DPS' receipt of federal monies suffices to meet this requirement. However, she offers no evidence that the federal funds it receives are for a primary objective of providing for employment. Although Reynolds emphasizes that Augustine Lopez was paid by a federal grant, she does not show that the grant was intended primarily to provide employment and not simply to fund various school programs or enrichment activities. Accordingly, Reynolds has not carried her burden of proof on her Title VI claim, see Rosario-Olmedo v. Community Sch. Bd. for Dist. 17, 756 F.Supp. 95, 96-97 (E.D.N.Y.1991) (dismissing Title VI claim for failure to state an essential element of claim where no evidence provided of how federal funds are used), and we affirm the district court's grant of summary judgment for Defendants.[9]
 
 B. Section 1981
 
 15
 Regardless of the presence of federal financial assistance, Reynolds claims that she was discriminated against because of her race in violation of 42 U.S.C. Sec. 1981. Section 1981 prohibits racial discrimination[10] in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. Sec. 1981(a) & (b).[11] To make out a claim under Sec. 1981, Reynolds must show that Defendants intentionally or purposefully discriminated against her. General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). We conclude that Reynolds has not produced sufficient evidence of intentional discrimination.
 
 
 16
 As a starting matter, the statute of limitations bars Reynolds from basing her claim on Defendants' failure to promote her to the middle school assistant principal position in 1989 or Director of Bilingual/ESOL Education position in 1990. Section 1981 does not specify a time period in which claims under that statute must be brought. Accordingly, we look to analogous state law for a limitations period, 42 U.S.C. Sec. 1988(a); Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975), and apply Colorado's residual two-year statute of limitations for personal injury actions, Col.Rev.Stat. Sec. 13-80-102(1)(i); Blake v. Dickason, 997 F.2d 749, 750-51 (10th Cir.1993).[12] Because the school district rejected Reynolds for the assistant principal and director promotions over two years before she filed the instant action on December 21, 1992, the statute of limitations bars her from basing her action on those events.[13]
 
 
 17
 Unrelated procedural reasons also bar Reynolds from basing her Sec. 1981 claim on her alleged demotion from the TOSA position to a classroom teaching job. Specifically, Reynolds failed to allege a claim based on the purported demotion before the district court. Reynolds filed her complaint in this case on December 21, 1992, before she was reassigned to a classroom teaching position on January 9, 1993, and could not, therefore, have stated any claim based upon the reassignment. Although Reynolds subsequently could have attempted to amend or supplement her complaint pursuant to Fed.R.Civ.P. 15,[14] she failed to do so. Moreover, the district court expressly noted that Reynolds had not made a claim based on her demotion. Under the circumstances, we adhere to our general rule that parties cannot raise an issue on appeal that they failed to raise below. Doelle v. Mountain States Tel. & Tel., 872 F.2d 942, 944 n. 4 (10th Cir.1989) (per curiam).
 
 
 18
 Having addressed Reynolds' reassignment to a classroom teaching position and failure to obtain the assistant principal or Director of Bilingual/ESOL Education promotions, we are left to consider the claims of failure to promote Reynolds to the positions of (1) Personnel Supervisor and (2) Bilingual/ESOL Department Coordinator, as well as Reynolds' alleged constructive discharge. Reynolds does not present direct evidence of intentional discrimination as to these events; instead, she relies on circumstantial evidence. Thus, we apply the McDonnell Douglas burden shifting framework originally devised in the Title VII context, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973), to evaluate whether she has demonstrated Defendants' discriminatory intent circumstantially. See Durham v. Xerox Corp., 18 F.3d 836, 839 (10th Cir.) (applying McDonnell Douglas to Sec. 1981 claim), cert. denied, --- U.S. ----, 115 S.Ct. 80, 130 L.Ed.2d 33 (1994). Under the McDonnell Douglas scheme, in order to survive summary judgment on a circumstantial case,[15] the plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. If the plaintiff carries that burden, the burden shifts to the defendant to articulate a facially nondiscriminatory reason for the challenged employment action. EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 & n. 4 (10th Cir.1992). If the defendant makes such a showing, the burden reverts to the plaintiff to prove that the proffered nondiscriminatory reason is pretextual, from which a jury may infer discriminatory intent. McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. at 1825; see also St. Mary's Honor Center v. Hicks, --- U.S. ----, ---- - ----, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) ("[R]ejection of the defendant's proffered reasons [ ] will permit the trier of fact to infer the ultimate fact of intentional discrimination.") (emphasis in original); Ingels v. Thiokol Corp., 42 F.3d 616, 621-22 (10th Cir.1994) (same); Durham, 18 F.3d at 839-40 (same). The Tenth Circuit has recently, in Randle v. City of Aurora, 69 F.3d 441, (10th Cir.1995), expressed en banc approval of the proposition of law that "a civil rights plaintiff may withstand a motion for summary judgment and is entitled to present his claim to the factfinder if the plaintiff establishes a prima facie case and presents evidence that the defendant's proffered nondiscriminatory reason was pretextual--i.e., unworthy of belief." Id., 69 F.3d at 452-53. Thus, evidence of pretext (plus a prima facie case) is enough to avoid summary judgment for the defendant without requiring the plaintiff to present direct evidence of an illegal discriminatory motive.
 
 
 19
 To carry the initial burden of establishing a prima facie case of race discrimination for a failure to promote claim, the plaintiff must typically show that he or she (1) belongs to a minority group; (2) was qualified for the promotion; (3) was not promoted; and (4) that the position remained open or was filled with a non-minority. See Mohammed v. Callaway, 698 F.2d 395, 398 (10th Cir.1983). For her constructive discharge claim, Reynolds must establish as the third element of her prima facie case that Defendants subjected her to working conditions that a reasonable person would view as intolerable, while not so treating members of a different race. See Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1386 (10th Cir.1991). Because Reynolds claims reverse discrimination, we further modify the requirements of the prima facie case--that is, Reynolds does not necessarily deserve the presumption of discrimination afforded to a member of an ostensibly disfavored minority class. Notari v. Denver Water Dep't, 971 F.2d 585, 588-89 (10th Cir.1992). Thus, Reynolds must identify background circumstances that would justify applying to a majority plaintiff the same presumption of discrimination afforded to a minority plaintiff who establishes a prima facie case by showing that the defendant is one of those unusual employers who discriminate against the majority. Id.; see also Shapolia v. Los Alamos Nat'l Lab., 992 F.2d 1033, 1038 & n. 6 (10th Cir.1993). Applying this legal framework to the instant case, we conclude that Reynolds has established a prima facie case as to the Bilingual/ESOL Coordinator position, but that she has failed to establish a prima facie case as to her claim that she was not promoted to the position of Personnel Supervisor and that she was constructively discharged. We address first the two claims where she has failed to establish a prima facie case.
 
 
 20
 First, as to the Personnel Supervisor position, the record reveals that Sue Koscove, a white woman, became Personnel Supervisor in November 1991. Thus, Reynolds cannot show that the promotion was given to someone of a different race, an essential element of the prima facie case.
 
 
 21
 Second, as to the constructive discharge claim, Reynolds has not shown that she was constructively discharged from her TOSA position when she was placed on administrative leave on December 2, 1992, and, thus, cannot claim that she was discriminatorily discharged at that time.[16] To establish that she was constructively discharged, Reynolds must show that she "was forced to quit due to race-based, intolerable working conditions." Bolden v. PRC Inc., 43 F.3d 545, 552 (10th Cir.1994), cert. denied, --- U.S. ----, 116 S.Ct. 92, --- L.Ed.2d ---- (1995). However, Reynolds never quit her job. Furthermore, she has identified no conditions that would have forced a reasonable employee to quit. All that Reynolds can show is that Defendants placed her on paid administrative leave in general accordance with relevant contractual procedures, see infra, pending an investigation of her alleged refusal to perform an assignment given to her by Thomas. Although Defendants later terminated Reynolds as a TOSA and transferred her to a classroom position, we have already held that Reynolds has failed to state a claim based on the transfer. Thus, Reynolds has not made out a prima facie case for a constructive discharge.
 
 
 22
 We turn, then, to Reynolds' claim based upon her failure to obtain a promotion to the Bilingual/ESOL Coordinator position. As to that claim, we hold that Reynolds has established a prima facie case. First, Reynolds has identified background circumstances that would justify a presumption of discrimination, even though she is not a member of a racial minority, if she can make out the remaining elements of a prima facie case. Specifically, Reynolds was the only white employee in the otherwise all-Hispanic Bilingual/ESOL Department, and Hispanic supervisors made most of the employment decisions of which Reynolds complains. Although statistical evidence alone does not establish intentional discrimination, particularly in the context of a bilingual education department where one might reasonably expect to find a disparity in the race of the employees, see Krulik v. Board of Educ. of New York, 781 F.2d 15, 22 (2d Cir.1986), it suffices in this case to establish the "suspicion that the defendant is that unusual employer who discriminates against the majority," Notari, 971 F.2d at 589 (quoting Parker v. Baltimore & Ohio R.R. Co., 652 F.2d 1012, 1017 (D.C.Cir.1981)).
 
 
 23
 Second, Reynolds did not receive the promotion despite being qualified for the position. Reynolds' qualifications include her roughly 20 years of classroom teaching experience and four years as a TOSA in the Bilingual/ESOL Department. Moreover, Reynolds ranked just behind Thomas to become director of the entire department when she applied for that post in 1990. Accordingly, we conclude that Reynolds has established that she was objectively qualified for the promotion that she did not receive.
 
 
 24
 Finally, the position was left open after Reynolds applied. Defendants argue that the position was only left open because of anticipated budget cuts, and emphasize that it was, in fact, later eliminated entirely. Although, as discussed below, these arguments constitute a nondiscriminatory reason for Defendants' actions, we do not believe they defeat Reynolds' prima facie case. First, the position remained open for some time after Reynolds applied. Second, even the elimination of a position, if done for racially motivated reasons, can potentially form the basis of a discrimination claim. Cf. Branson v. Price River Coal Co., 853 F.2d 768, 771 (10th Cir.1988) (addressing claims that positions were eliminated in a way that discriminated against employees on the basis of their age). Finally, MacDonald v. Eastern Wyoming Mental Health Ctr. instructs us to address an employer's explanations for its actions in subsequent stages of the McDonnell Douglas inquiry and allow employees to clear the prima facie hurdle without countering those explanations. 941 F.2d 1115, 1119-22 (10th Cir.1991). Accordingly, we conclude, contrary to the district court, that Reynolds "was rejected under circumstances which give rise to an inference of unlawful discrimination," Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981), and shift the burden to Defendants to articulate a facially nondiscriminatory reason for not promoting Reynolds to the Coordinator position.
 
 
 25
 As already alluded to, Defendants explain that they did not fill the position because of anticipated budget cuts related to the passage of a tax limitation initiative in Colorado, and show that they, in fact, subsequently eliminated the position altogether. Defendants have, thus, carried their burden, and the burden reverts to Reynolds to establish a genuine dispute as to whether Defendants' concerns about anticipated budgetary constraints were pretextual. We hold that Reynolds has failed to make that showing.
 
 
 26
 Reynolds has demonstrated that, despite Defendants' alleged budgetary concerns, the Bilingual/ESOL Department budget increased from fiscal year 1992-1993 to 1993-1994 by almost $41,500, or by approximately 2 percent. However, considering the impact of inflation, this may actually represent a budget cut. At any rate, Reynolds introduced no evidence that Defendants were not genuinely concerned about the effect on their budget of the proposed tax limitation Amendment One, which ultimately passed. At best, Reynolds may have shown that Defendants were overly concerned about budget cuts. However, an employer's exercise of erroneous or even illogical business judgment does not constitute pretext. See Flasher, 986 F.2d at 1318 ("Title VII does not make ... irrational employment [decisions] illegal."). Pretext requires a showing that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason. A true motivating reason is not made pretextual merely because, from the benefit of hindsight, it turned out to be poor business judgment. Thus, as Reynolds has offered no evidence suggesting that Defendants were not actually concerned about budget cuts, we conclude that she has not carried her burden of calling Defendants' facially nondiscriminatory explanation for not promoting her into doubt as pretextual. Accordingly, we affirm the district court's grant of summary judgment on this claim.
 
 
 27
 C. Section 1983 Employment Discrimination Claim
 
 
 28
 Based on the above described events, Reynolds also claims that Defendants discriminated against her in violation of 42 U.S.C. Sec. 1983. However, Reynolds fails to articulate the basis of her Sec. 1983 cause of action. Section 1983 itself does not create any substantive rights, but merely provides relief against those who, acting under color of law, violate federal rights created elsewhere. Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979). Thus, Reynolds' failure to identify an independently created right upon which her Sec. 1983 action rests is fatal to her claim. To the extent that Reynolds intended to base her Sec. 1983 claim on the Equal Protection Clause, our holding that Reynolds has not established that Defendants acted intentionally to discriminate against her would similarly dispose of her claim under Sec. 1983.
 
 D. Sec. 1983 EEOC Guidelines Claims
 
 29
 Reynolds alleges a separate Sec. 1983 cause of action--independent of the Sec. 1983 claim related to particular adverse employment actions--based on Defendants' failure to adopt impartial selection and promotion procedures pursuant to EEOC guidelines in alleged violation of her equal protection and due process rights. See 29 C.F.R. Secs. 1607.1-.18. The district court dismissed the cause of action for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) because it found that the school board was not required to adopt the EEOC guidelines. Dismissal under Rule 12(b)(6) is appropriate where "the plaintiff can prove no set of facts in support of the claims that would entitle him to relief." Coosewoon v. Meridian Oil Co., 25 F.3d 920, 924 (10th Cir.1994). We review the district court's dismissal under Rule 12(b)(6) de novo, Hunt v. Bennett, 17 F.3d 1263, 1265 (10th Cir.), cert. denied --- U.S. ----, 115 S.Ct. 107, 130 L.Ed.2d 55 (1994), and affirm.
 
 
 30
 Reynolds' allegations that Defendants have failed to adopt nondiscriminatory selection procedures are wholly conclusory. She identifies no particular selection policy or criteria employed by Defendants, let alone one that discriminatorily impacted her. Furthermore, her attempt to invoke EEOC guidelines does not bolster her claim. An employer remains in compliance with the EEOC guidelines Reynolds identifies by either (1) validating its employee selection procedures in accordance with the guidelines; or (2) employing procedures that do not result in a discriminatory adverse impact on a protected group. 29 C.F.R. Sec. 1607.16.C. Employers need not adopt the guidelines per se so long as their employee selection procedures are nondiscriminatory. Reynolds has not identified any such discriminatory procedures. As we have already held, neither has she demonstrated that Defendants discriminated against her in any particular employment actions. Therefore, we reject her claim and affirm the district court's ruling.
 
 III. STATE LAW CLAIMS
 
 31
 We turn next to Reynolds' claims under Colorado law for (1) breach of contract; (2) negligent supervision; and (3) tortious interference with prospective contractual advantage. The district court dismissed the negligent supervision and tortious interference claims for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and granted summary judgment for Defendants on the breach of contract claim. Applying the standards of review outlined above for Rule 12(b)(6) and summary judgment, and reviewing the district court's interpretation of state law de novo, Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220-21, 113 L.Ed.2d 190 (1991), we affirm the district court's rulings.
 
 A. Breach of Contract
 
 32
 Reynolds maintains that Defendants breached the collective bargaining agreement between the Denver Classroom Teachers Association and School District No. 1, which governed her employment relationship. Although Reynolds does not clearly identify the specific actions breached this agreement, we presume, based on our review of the pleadings and the parties' representations, that her claim rests on the following events and allegations: (1) wrongful placement on administrative leave; (2) denial of due consideration in promotions; (3) discrimination; (4) interference with personal mail; (5) alteration of personnel file; (6) prevention from entering workplace; (7) failure to follow prescribed grievance procedure; and (8) improper reassignment. Nevertheless, even presuming Reynolds based her claim on all of these events, we conclude that she has failed to provide evidence upon which a reasonable jury could find that Defendants breached her contract.
 
 
 33
 In Jefferson County Dist. No. R-1 v. Shorey, the Colorado Supreme Court recognized that an employee has standing to enforce a collective bargaining agreement. 826 P.2d 830, 842-43 (Colo.1992) (en banc). However, where the collective bargaining agreement provides for an administrative grievance procedure,[17] the employee must exhaust that procedure before bringing a private judicial action, or show an exception that would excuse a failure to exhaust. Id. at 843-44.[18] In the instant action, Article 7 of the collective bargaining agreement establishes a grievance procedure similar to the one in Shorey. See Appellee Supp.App. at 13-15. Therefore, Reynolds must show that she exhausted her available remedies under that procedure or that she was excused from exhaustion. The district court concluded that Reynolds failed to make that showing. We agree, except that we conclude that Reynolds did exhaust the grievance procedure as to her placement on administrative leave. Nevertheless, as to that claim, we affirm the district court's grant of summary judgment on different grounds.
 
 
 34
 Reynolds filed a grievance with the teacher's union on January 4, 1993 and amended that grievance on January 27, 1993.[19] In her initial grievance, Reynolds complained primarily that she was wrongly placed on administrative leave and accused of insubordination. Then in her amended grievance, she added that the grievance procedures themselves had not been followed, and that Defendants had impermissibly assigned her to a classroom position in retaliation for filing a grievance. Although Reynolds stated that she believed her supervisor discriminated against her because of her race, she did not link that discrimination to any specific event besides the administrative leave. Similarly, Reynolds stated that she had not been given proper consideration in promotion matters, but did not reference any specific promotions.[20] Accordingly, Reynolds did not truly exhaust the grievance procedure as to her claim that Defendants discriminatorily or otherwise wrongfully denied her promotions. Furthermore, Reynolds never complained in any grievance that Defendants interfered with her personal mail, altered her personnel file, or prevented her from entering the workplace. As such, we hold that Reynolds failed to exhaust those claims as well and, therefore, cannot rely upon them for her breach of contract action.[21]
 
 
 35
 Moreover, Reynolds cannot claim that Defendants breached her contract by reassigning her or failing to follow the grievance procedure. As explained above, those events occurred after Reynolds filed the instant case, and she never amended her complaint to add them to her action. Thus, they were never presented to the district court, and we will not consider them on appeal.
 
 
 36
 Having failed to exhaust her other claims, Reynolds can only base her breach of contract claim on her allegedly wrongful placement on administrative leave. However, Reynolds has not shown that such action would constitute a breach of contract. Specifically, the collective bargaining agreement requires only that before teachers are placed on administrative leave for purposes of investigation that they be given the basic reason for why they are being investigated and, when possible, given an opportunity to respond. Appellee Supp.App. at 19. By Reynolds' own admission, Defendants met with her before placing her on leave, and thus, satisfied these requirements. Although certain disciplinary actions can only be taken against teachers for just cause, no such requirement exists for placing them on paid administrative leave pending an investigation. Accordingly, Reynolds has not shown that Defendants breached the collective bargaining agreement, and we affirm the district court's grant of summary judgment for Defendants as to her placement on administrative leave on that ground. See United States v. Sandoval, 29 F.3d 537, 542 n. 6 (10th Cir.1994) (explaining that we can affirm a district court decision on any grounds for which there is support in the record).[22]
 
 
 37
 B. Negligent Supervision and Tortious Interference
 
 
 38
 The district court dismissed Reynolds' remaining state law claims for negligent supervision and tortious interference with future contractual relations because Reynolds failed to comply with the notice requirements of Colorado's governmental immunity statute. Indeed, Reynolds concedes that she did not comply with those notice requirements. However, she maintains that her actions somehow sound in contract and, therefore, are not covered by the immunity statute. We disagree and affirm the district court's dismissal of Reynolds' claims.
 
 
 39
 Colorado's governmental immunity statute applies to actions against public entities or employees "which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant." Colo.Rev.Stat. Sec. 24-10-102; City and County of Denver v. Desert Truck Sales, Inc., 837 P.2d 759, 763 (Colo.1992) (en banc). Under Colorado immunity law,
 
 
 40
 [a]ny person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.
 
 
 41
 Colo.Rev.Stat. Sec. 24-10-109. Reynolds' negligent supervision and tortious interference claims lie in tort. Thus, the notice requirements of Sec. 24-10-109 apply, and Reynolds' failure to comply with those requirements acts as a jurisdictional bar to her claims.
 
 
 42
 Reynolds argues that certain contract or civil rights actions against governmental entities are excluded from coverage of Colorado's governmental immunity statute even though they lie, or could lie, in tort. See, e.g., Jorgenson v. City of Aurora, 767 P.2d 756, 758 (Colo.App.1988); Srb v. Board of County Comm'rs, 43 Colo.App. 14, 601 P.2d 1082, 1085 (1979), cert. quashed, 199 Colo. 496, 618 P.2d 1105 (1980). However, all of the cases that Reynolds cites as exceptions to Colorado's general rule requiring the filing of written notice before suing a public entity or public employees involved constitutional or contractual rights not implicated by her tort claims.[23] No notice requirement was applied to Reynolds' contract or civil rights claims. However, as to her tort claims, the district court properly applied a notice requirement, which Reynolds failed to satisfy.[24]
 
 IV. CONCLUSION
 
 43
 For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for Defendants on Reynolds' employment discrimination claims under Title VI, Sec. 1981, and Sec. 1983, and state law breach of contract claim. We further AFFIRM the court's dismissal pursuant to Rule 12(b)(6) of Reynolds' Sec. 1983 claim based on Defendants' failure to follow EEOC guidelines and state law claims for negligent supervision and tortious interference with prospective contractual advantage.
 
 
 
 *
 The Honorable Santiago E. Campos, Senior District Judge, United States District Court for the District of New Mexico, sitting by designation
 
 
 [1]
 Reynolds testified that she applied for a "principal's position." DPS personnel records indicate only that Reynolds applied for a middle school assistant principal position. Since Reynolds does not dispute these records, we presume that Reynolds' reference to a principalship was to the middle school assistant principal position
 
 
 [2]
 The anticipated budget cuts related to the expected passage of a tax limitation initiative on the Colorado election ballot that year known as "Amendment 1."
 
 
 [3]
 Reynolds also alleges that when Leroy Lopez, Associate Superintendent for the Denver Public Schools, informed her that the coordinator position was being cut, he told her that she might not be part of the Bilingual/ESOL Department at all after the semester
 
 
 [4]
 Reynolds alleges that Augustine Lopez, who joined the department in the fall of 1992, effectively replaced her and enjoyed special consideration because he was Hispanic
 
 
 [5]
 During this time Reynolds asserts that Defendants opened her mail and did not forward it to her for a period of time. She further alleges that Defendants removed and/or altered her personnel files
 
 
 [6]
 The court also granted summary judgment on Reynolds' Sec. 1983 claim based on the denial of equal employment opportunities, although the court did not expressly address that claim. As explained below, Reynolds does not clearly articulate the basis of her Sec. 1983 discrimination claim; nevertheless, the district court's ruling resolves any of the possible claims that Reynolds arguably raised
 
 
 [7]
 In its entirety, section 2000d-3 provides:
 Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.
 42 U.S.C. Sec. 2000d-3.
 
 
 [8]
 Although the literal language of Sec. 2000d-3 establishing the requirement that a primary objective of federal funding be to provide employment only applies to federal administrative action to redress civil rights violations under Title VI, we apply the requirement to the implied private rights of action which have been read into the statute. Otero v. Mesa County Valley Sch. Dist. No. 51, 470 F.Supp. 326, 329 (D.Colo.1979), aff'd, 628 F.2d 1271, 1273 (10th Cir.1980); see also Temengil v. Trust Territory of the Pacific Islands, 881 F.2d 647, 653 (9th Cir.1989), cert. denied, 496 U.S. 925, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990); Doe v. St. Joseph's Hosp., 788 F.2d 411, 419 n. 12 (7th Cir.1986); Association Against Discrimination in Employment, Inc. v. City of Bridgeport, 647 F.2d 256, 276 (2d Cir.1981), cert. denied, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982); Carmi v. Metropolitan St. Louis Sewer Dist., 620 F.2d 672, 674-75 (8th Cir.), cert. denied, 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980), abrogated on other grounds, 465 U.S. 624, 628-29, 104 S.Ct. 1248, 1251-52, 79 L.Ed.2d 568 (1984); Trageser v. Libbie Rehabilitation Ctr., Inc., 590 F.2d 87, 88-89 (4th Cir.1978), cert. denied, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979), abrogated on other grounds, 465 U.S. 624, 628-29 & n. 6, 104 S.Ct. 1248, 1252 n. 6, 79 L.Ed.2d 568 (1984)
 
 
 [9]
 Reynolds argues on appeal that Title VI does not require a private claimant to exhaust his or her available administrative remedies before filing suit. However, we do not reach this issue because we dispose of her Title VI claim on other grounds, as did the district court
 
 
 [10]
 Specifically, 42 U.S.C. Sec. 1981(a) provides, in relevant part, that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. Sec. 1981(a). The Supreme Court has interpreted this language as prohibiting discrimination against white persons in contractual matters because of their race. McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 287, 96 S.Ct. 2574, 2582, 49 L.Ed.2d 493 (1976) ("... Sec. 1981 is applicable to racial discrimination in private employment against white persons.")
 
 
 [11]
 The Civil Rights Act of 1991 added this prohibition against discrimination in contract formation, performance, modification, and termination. Pub.L. No. 102-166, Sec. 101, 105 Stat. 1071, 1071-72 (1991). Previously, Sec. 1981 did not apply to contract performance generally, and only prohibited discrimination in contract formation or the legal enforcement of a contract right. Patterson v. McLean Credit Union, 491 U.S. 164, 176-77, 109 S.Ct. 2363, 2372-73, 105 L.Ed.2d 132 (1989). Reynolds' claim is governed only in part by the amended statute. That is, the Civil Rights Act of 1991 was effective as of November 21, 1991 and is not applied retroactively to claims arising before that date. Rivers v. Roadway Express, Inc., --- U.S. ----, ---- - ----, 114 S.Ct. 1510, 1519-20, 128 L.Ed.2d 274 (1994). The events underlying Reynolds' action occurred both before and after November 21, 1991. However, as explained below, we focus on events after that date, and, therefore, apply the amended version of Sec. 1981
 
 
 [12]
 As we explained in Baker v. Board of Regents, injuries claimed under Sec. 1981, as well as those under Title VI and Sec. 1983, are best characterized as injuries to personal rights, and, thus, borrow the statute of limitations period for personal injury actions. 991 F.2d 628, 630-32 (10th Cir.1993). Where a state provides for multiple statutes of limitations for different types of personal injuries, we look to the general or residual statute for personal injury actions. Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 581-82, 102 L.Ed.2d 594 (1989)
 
 
 [13]
 Reynolds argued below that the statute of limitations should not bar her claims based on the assistant principal and director promotions because she did not realize that those actions were discriminatory until she became aware of Defendants' continuing pattern of discriminatory treatment following their subsequent actions. See Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1414-16 (10th Cir.1993). The district court rejected Reynolds' argument, ruling that she had not shown that she could have discovered the discrimination only some time after the actual adverse employment actions. Reynolds has not challenged that factual ruling on appeal; therefore, we do not address the issue
 
 
 [14]
 In particular, Fed.R.Civ.P. 15(d) provides, in relevant part, that "[u]pon motion of a party the court may ... permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."
 
 
 [15]
 Of course, if the plaintiff presents direct evidence of illegal discrimination, the burden shifting analysis need not come into play
 
 
 [16]
 Reynolds does not allege a Sec. 1981 claim based on her placement on administrative leave in and of itself, but only challenges that action as a constructive discharge
 
 
 [17]
 Shorey labels such grievance procedures "exclusive" remedies, even though they are not truly exclusive in the sense that an employee can seek judicial remedy after exhausting those "exclusive" administrative remedies. 826 P.2d at 843-44
 
 
 [18]
 For example, exhaustion is excused where (1) it would be futile; (2) the employer through its conduct has repudiated the grievance procedure itself; or (3) the union has prevented the employee from utilizing the grievance process. Shorey, 826 P.2d at 844 & n. 6
 
 
 [19]
 We note that Reynolds filed her grievance after she filed the instant lawsuit. Nevertheless, we will consider the grievance for purposes of exhaustion in the present case
 
 
 [20]
 We note further that grievances must be filed within 20 days after an employee knows or should have known of the challenged action or condition. All of Reynolds' attempts to secure a promotion occurred greater than 20 days before she filed her grievance
 
 
 [21]
 Although Reynolds argues that she should be excused from exhausting available administrative procedures, she has not shown that exhaustion would have been futile, that Defendants somehow repudiated the grievance procedure, or that the union or anyone else prevented her from availing herself of the grievance procedure
 
 
 [22]
 We also affirm the district court's ruling that Reynolds failed to allege that the individual defendants whom she sued were parties to the contract or can be held personally liable under its terms
 
 
 [23]
 In fact, in City and County of Denver v. Desert Truck Sales, Inc., a case on which Reynolds relies, the Colorado Supreme Court reversed a lower court decision excluding a tort action from Colorado's Governmental Immunity Act because the seizure of a vehicle did not implicate any constitutional concerns. 837 P.2d 759, 764-67 (Colo.1992) (en banc) (reversing 821 P.2d 860, 861-62 (Colo.App.1991))
 
 
 [24]
 We are similarly unpersuaded by Reynolds' suggestion that her intentional interference claim is excluded from Colorado's governmental immunity provisions because it is based on the alleged willful and wanton actions by Defendants. As Colo.Rev.Stat. Sec. 24-10-109 clearly provides, would-be plaintiffs must file written notice even for claims challenging willful and wanton acts or omissions