77 F.3d 494
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Cynthia Faye WOODS, Plaintiff/Counter-Defendant/Appellant,
v.
S.A. NEUMEYER; Sean Debow, named as: Shawn Debow;
individually and as members of the Aurora Police Department;
Aurora, City of, a municipal corporation in The state of
Colorado, joint and several liability, Defendants-Appellees,
v.
WAL-MART, a Corporation, Counterclaim-Defendant/Appellee.
 No. 95-1097.
 United States Court of Appeals, Tenth Circuit.
 Feb. 16, 1996.
 
 Before PORFILIO, HENRY, and BRISCOE, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Title 42 U.S.C.1981 provides, in part, "[a]ll persons ... shall have the same right ... to the full and equal benefit of all laws ... as is enjoyed by white citizens." Under 42 U.S.C.1983, an aggrieved person may sue "every person" who, acting under color of state law, abridges rights, immunities, or privileges created by the Constitution or laws of the United States. Ms. Cynthia Faye Woods invoked both statutes as well as state causes of action to characterize and proscribe the conduct of her employer, Wal-Mart; police officers in the Aurora Police Department, Steven A. Neumeyer and Sean T. Debow; and the Aurora Police Department, City of Aurora, Colorado. Her grievances, however, are not cognizable within these statutory bounds and were properly dismissed by summary judgment. We therefore affirm.
 
 
 2
 Because the parties are amply familiar with the facts of this case, we sketch them briefly only to illustrate the legal conclusions they precipitate. On December 5, 1991, just before closing out her register at a Wal-Mart store in Aurora, Ms. Woods, a cashier in her second month of employment at the store, was filmed by an internal security camera permitting a customer to pass through her check-out stand, paying only for a pair of tweezers and an item of children's clothing, although the shopping cart contained a color television and eleven articles of clothing. A Wal-Mart security officer observed the encounter, followed the customer, Ms. Pamela Archuleta, outside the store and escorted her to a non-public room where she confessed to taking the merchandise. Ms. Woods was also summoned. Upon spotting Ms. Archuleta, store personnel heard Ms. Woods exclaim, "I know what's goin' on, that's my sister-in-law, and I know what's goin' on." Ms. Archuleta told store personnel she was related to Ms. Woods by marriage. A check of store personnel records revealed Ms. Woods' married name is Martin, which is the same name Ms. Archuleta gave Wal-Mart as her maiden name. Aurora police, summoned to the store, spoke to the security officer, viewed the videotape, and proceeded to arrest Ms. Woods, charging her with felony theft and conspiracy to commit theft.[2] Although taken to the Aurora jail, Ms. Woods was soon released and later, after a trial, found not guilty of the charged offenses in a state court proceeding. That verdict spawned this lawsuit.
 
 
 3
 According to Ms. Woods, an African American, the shoplifter duped other white Wal-Mart employees, none of whom was implicated in the theft by the Aurora police or terminated by Wal-Mart. Consequently, she alleged under 1981 she was denied the equal protection of the law "enjoyed by white citizens." Ms. Woods further alleged Officers Neumeyer and Debow, and Wal-Mart, acting under the authority of state law, violated her fourth amendment right to be free from an unreasonable seizure when they detained and arrested her, supported only by misinformation and hearsay. This state action by the police, she asserted, represented an official municipal policy of the Aurora Police Department designed to deprive Ms. Woods of her rights.
 
 
 4
 Central to the resolution of each of Ms. Woods' claims is the question whether there was probable cause to arrest. Indeed, the fourth and fourteenth amendments are violated when a state officer arrests a person without probable cause. Although we review anew the district court's legal determination Officer Debow had probable cause, the facts underpinning that conclusion are subject to the clearly erroneous standard of Fed.R.Civ.P. 56(c). Randle v. City of Aurora, 69 F.3d 441, 446, n. 7 (10th Cir.1995). Even were we to prefer another permissible reading of the evidence, the trial court's choice between the two cannot be judged clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985).
 
 
 5
 To undermine its finding there was probable cause to arrest based on statements made to the arresting officer and a review of the videotape, Ms. Woods offers half of a legal principle. While it is true that a warrantless arrest may be restricted under certain circumstances to those crimes committed in the presence of the police, as Ms. Woods urges, the police may also arrest a person without a warrant when there are reasonable grounds to believe the person to be arrested has committed or is committing a crime. United States v. Clay, 495 F.2d 700, 704 (7th Cir.), cert. denied, 419 U.S. 937 (1974). In this case, Officer Debow watched the videotape of Ms. Woods' bagging items of clothing and folding what later was discovered to be a Target store receipt over the top of the Wal-Mart sack. Ms. Woods rang up for sale only two small items. Together with Ms. Archuleta's confession and Wal-Mart personnel's observations and statements about the relationship between the cashier and customer, a reasonable officer could conclude there was probable cause to believe Ms. Woods committed a crime.
 
 
 6
 Probable cause presents a lower threshold than actual guilt. It "does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt." Gerstein v. Pugh, 420 U.S. 103, 121 (1975). Moreover, an "[a]cquittal does not establish the lack of probable cause." Scruggs v. United States, 929 F.2d 305, 307 (7th Cir.1991).
 
 
 7
 These legal touchstones support two conclusions that undermine Ms. Woods' 1981 claim. First, we cannot say the district court's determination that Officer Debow had probable cause to arrest Ms. Woods was error. No subsequent acquittal alters this finding at the outset. Moreover, when we purge this conclusion of the insinuations of racial animus Ms. Woods injects,[3] her contention that all actions flowing from that initial arrest are unlawful must also fail.
 
 
 8
 Second, the essential element of a 1981 claim, intentional discrimination based on race, is missing. Fitzgerald v. Mountain States Tel. & Tel. Co., 68 F.3d 1257, 1262 (10th Cir.1995). Although Ms. Woods presents no direct evidence of intentional discrimination, we may apply the McDonnell Douglas proof scheme to decide whether Ms. Woods established discriminatory intent by circumstantial evidence. Reynolds v. School Dist. No 1, Denver, Colo., 69 F.3d 1523, 1533 (10th Cir.1995) (citation omitted). Again, having read the record, we are at a loss to find defendants intended to discriminate against Ms. Woods.
 
 
 9
 Indeed, the record reveals no facts, other than Ms. Woods' allegations, that similarly situated white employees who interacted briefly with Ms. Archuleta, but were not arrested or prosecuted, were accorded their full rights, thus establishing a 1981 violation. The videotape captures only Ms. Woods' under-ringing the sale. The record contains no evidence of racial slurs or other conduct indicating Officer Debow and Wal-Mart acted with the intent to discriminate against Ms. Woods. Instead, the record presents a rather straightforward picture of an incident of shoplifting to which the employer and police responded.
 
 
 10
 This void similarly disables Ms. Woods' claims under Title VII that Wal-Mart discriminated in terminating her employment. Id. at 1533; Durham v. Xerox, 18 F.3d 836 (10th Cir.), cert. denied, 115 S.Ct. 80 (1994). Against Wal-Mart's proffered nondiscriminatory reason for terminating Ms. Woods, theft, (Appendix 6), Ms. Woods has alleged only that other white employees who were deceived by Ms. Archuleta were not also terminated. Nevertheless, these allegations fall short, disparate treatment being insufficient to satisfy proof of intentional discrimination. Consequently, Ms. Woods has failed to meet her burden of showing Wal-Mart's explanation is pretextual. The district court properly granted summary judgment.
 
 
 11
 Ultimately, these conclusions, the existence of probable cause and the lack of proof of intentional discrimination, snare each of Ms. Woods' claims of error. While they do not specifically address the City of Aurora's liability for maintaining an official policy of discrimination, they certainly lead the way to our analysis of that issue. In her third amended complaint, Ms. Woods alleged:
 
 
 12
 The actions of the Police officers, the Aurora Police Department and the City of Aurora, in this case, were based on official policies, customs, usages, practices of not properly investigating and at the same time not securing the decision of a neutral magistrate as was the case herein in the case of Plaintiff, Cynthia Faye Woods. This custom, practices [sic] and/or policies, etc. is [sic] exemplified by the facts of this case, in that proper investigation was not conducted and a neutral magistrate was not sought, in an attempt to exonerate the Plaintiff of the accusation of having committed the crime of theft and being involved in a conspiracy to commit theft as is required by law, in any felony such as the felonies the Plaintiff is accused of.
 
 
 13
 (emphasis in original).
 
 
 14
 Merely stating that "this custom ... is exemplified by the facts of this case" does not prove the existence of an unconstitutional municipal policy, however. City of St. Louis v. Praprotnik, 485 U.S. 112, 128 (1988). Nor has Ms. Woods alleged similar discriminatory treatment of others amounting to a practice or policy that is widespread, Melton v. City of Oklahoma City, 879 F.2d 706, 725 n. 26 (10th Cir.1989), cert. denied, 502 U.S. 906 (1991), or long-standing. Jett Dallas Indep. Sch. Dist., 491 U.S. 701, 736 (1989). In oral argument, the City of Aurora, responding to a question by the panel, stated it had no specific policy whether to issue a summons and complaint or arrest the individual suspected of shoplifting or theft but relied on the officer's probable cause determination. In that vacuum, Ms. Woods does not allege how the officer's action reflects any official sanction. Pembaur v. City of Cincinnati, 475 U.S. 469 (1986). Clearly, Ms. Woods' theory is premised on respondeat superior, which has been long rejected by the Court. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694 (1978).
 
 
 15
 We therefore AFFIRM the district court's judgment granting summary judgment on behalf of Officers Debow and Neumeyer and the City of Aurora Police Department on plaintiff's sections 1981 and 1983 claims. For Wal-Mart, we AFFIRM its nonliability under sections 1981, 1983 and 42 U.S.C.2000(e) et seq.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 Ms. Archuleta was a codefendant in the state criminal proceeding where she was also charged with possession of drug paraphernalia
 
 
 [3]
 In her summary of the arguments, Ms. Woods contends, "The same standard of probable cause requirements apply to a white person as well as a black person."