947 F.2d 944
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard F. CONLIN, Richard L. Fitzpatrick, et. al.,
Plaintiff-Appellants,
v.
James J. BLANCHARD, et. al., Defendant-Appellees.
 No. 90-2098.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1991.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and CELEBREZZE Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In 1988, plaintiff Richard Conlin and three other Michigan Department of Transportation ("MDOT") employees filed an action, pursuant to 43 U.S.C. § 1983, seeking declaratory and injunctive relief against a number of Michigan state government officials and departments.
 
 
 2
 The district court summarily dismissed the claims of three of the four plaintiffs on procedural grounds. Only plaintiff Fitzpatrick's claims of constitutional violations by Michigan state agencies and MDOT remained at issue. The district court ultimately dismissed plaintiff Fitzpatrick's claims after concluding his fourteenth amendment rights were not violated by the use of a Michigan affirmative action program in the hiring of a female applicant over Fitzpatrick for a civil service position in MDOT. Fitzpatrick appealed the district court's decision. In Conlin v. Blanchard, 890 F.2d 811 (6th Cir.1989), a panel of this court held that the district court judgment correctly dismissed the three plaintiffs on procedural grounds, but reversed and remanded Fitzpatrick's cause for additional fact-finding. The panel specifically mandated an evidentiary hearing to determine whether sex was a factor in the MDOT hiring decision at issue and whether it necessitated implementation of affirmative action.
 
 
 3
 After a full evidentiary hearing on remand, the district court concluded that the plaintiff did not state a fourteenth amendment violation because sex was not a factor in the hiring decision of MDOT. The district court went on to find that the record supported the determination that females were underrepresented and that the affirmative action at issue survives strict scrutiny and is thus constitutional.
 
 
 4
 Fitzpatrick now appeals, raising three assignments of error which challenge: 1) the district court's finding that sex was not a factor in the promotion of a woman over the plaintiff, a white male; 2) the district court's finding of constitutionality of the affirmative action programs; and 3) the district court judge's ability to give Fitzpatrick a fair and impartial trial. Upon review, we AFFIRM the judgment of the district court.
 
 I.
 
 5
 In February 1987, Fitzpatrick unsuccessfully applied for a position as a Property Specialist VIII in MDOT. Fitzpatrick had a university degree and was an MDOT employee of many years. Though he already held the position as a temporary interim employee, the district court found that Fitzpatrick had problems in consistently and satisfactorily completing his duties without supervision. The district court also noted that Fitzpatrick unsuccessfully applied for Property Specialist VIII positions seven times, before he voluntarily retired in 1989. White males were hired in five of the seven instances.
 
 
 6
 MDOT utilized an affirmative action program entitled "augmented certification" to correct an underrepresentation of females in the department. The augmented certification procedure required that women applicants deemed qualified be placed on a list of well-qualified candidates where there were not already three well-qualified candidates. C. Mary Carlisle and another woman were thus placed on the list from which MDOT ultimately hired. MDOT used augmented certification only to place the women on the list. The district court explicitly found that the interview panel which selected Carlisle was unaware, pursuant to affirmative action policy, of the use of augmented certification to place the women on the list. Further, the panel was never instructed to hire a woman. The MDOT panel selected Carlisle, a woman with over twenty years of experience, a real estate license, but no college degree, as the best qualified to fill the permanent position. The panel fully considered Fitzpatrick, who remained on the well qualified list for future appointments until his retirement.
 
 
 7
 The district court found that the record supported the determination that females were underrepresented in the department. The court, however, determined that the panel found Carlisle to be the most qualified candidate and that, in light of the facts enumerated above, sex was not a factor in the panel's unanimous recommendation of Carlisle for the position. The court went to apply the strict scrutiny test of constitutionality to determine that the augmented certification procedure used to elevate Carlisle to the list of well-qualified candidates was narrowly tailored and justified by past discrimination. We agree that sex was not a factor in the promotion of Carlisle to the position and, on that basis, affirm the judgment of the district court.
 
 II.
 
 8
 In its remand order, a panel of this court held that "... [i]f sex was not considered at all, then of course no discrimination occurred." Conlin, 890 F.2d at 817. This court relied on Johnson v. Transp. Agency, Santa Clara Cty., Cal., 480 U.S. 616, 626, 632 to hold that even if sex was used as a "tiebreaking" factor in a decision between two similarly qualified applicants, the remedy may be considered narrowly tailored and not violative of the fourteenth amendment. Conlin, 890 F.2d 811 at 817.
 
 
 9
 Where, as here, specific proceedings are mandated in a remand order, the district court is limited to ruling as directed by the superior court. Sullivan v. Hudson, 490 U.S. 877, 886 (1989); Briggs v. Pennsylvania R. Co., 334 U.S. 304, 306 (1947); Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949 (3rd Cir.1985); Mefford v. Gardner, 383 F.2d 748, 758 (6th Cir.1987); NAACP, Detroit Branch v. Detroit Police Officers Assn., 676 F.Supp. 790, 791 (E.D.Mich.1988). The appellate court will only consider whether: 1) the district court properly interpreted its mandate; 2) the district court fully completed the required procedures; and 3) whether its own findings were clearly erroneous. Hawkes v. I.R.S., 507 F.2d 481, 482 (6th Cir.1974).
 
 
 10
 As we previously noted, in compliance with this court's mandate, the district court conducted evidentiary proceedings which revealed that: 1) Carlisle was unanimously determined the be the best qualified applicant for the position; 2) affirmative action was properly implemented to correct an underrepresentation of females in the department; 3) the panelists were unaware of the use of affirmative action; 4) the panelists were never instructed to hire a woman or a member of a protected class; 5) Fitzpatrick had problems in performing his duties while acting as interim property specialist VIII; and 6) Fitzpatrick unsuccessfully applied for seven comparable positions, five of which were filled by white males.
 
 
 11
 FED.R.CIV.P. 52(a) prohibits the reversal of a district court's finding of fact unless it is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). A factual finding is clearly erroneous only where the reviewing court is convinced, based upon the entire evidence, that a mistake has been committed. Anderson, 470 U.S. at 573 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)); Chrysler Credit Corp. v. H. & H. Chrysler-Plymouth Dodge, Inc., 927 F.2d 270, 274 (6th Cir.1991).
 
 
 12
 We cannot say that the trial court's finding, supported by evidence in the record on appeal, is clearly erroneous. Where, as here, an appellate court determines a case, that determination becomes the law of the case. Miles v. Kohli & Kaliher Assoc. Ltd. 917 F.2d 235, 241 (6th Cir.1974); Heathcoat v. Potts, 905 F.2d 367, 370 (11th Cir.1990). We are thus bound by this court's previous mandate that "[i]f sex was not considered at all ... no discrimination occurred." Conlin, 890 F.2d at 817. We find the district court properly denied Fitzpatrick's complaint.
 
 III.
 
 13
 In light of our disposition in the preceding section, we decline to address the constitutionality of the affirmative action and augmented certification programs at issue in this case.
 
 IV.
 
 14
 On appeal, Fitzpatrick also contends the district court's conduct denied him a fair and impartial trial. Fitzpatrick asks that any further remand order contain a provision assigning the case to another judge.
 
 
 15
 The record reveals that Fitzpatrick previously moved the court to recuse the district court judge. This motion was denied. Fitzpatrick now challenges the propriety of nine evidentiary rulings, which he deems indicative of the judge's bias and hostility. The disputed rulings regard: 1) the court's exclusion of MDOT race and handicap evidence; 2) the court's admonition to examine evidence only relevant to sexual discrimination; 3) the court's refusal to admit documentary evidence it deemed stale or irrelevant; and 5) the exclusion of documents post-dating the challenged appointment of Carlisle.
 
 
 16
 The district court's prohibition of extraneous and irrelevant evidence is within its sound discretion and will not be disturbed absent a showing of an abuse. Laney v. Celotex Corp., 901 F.2d 1319, 1320 (6th Cir.1990); Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 156-157 (6th Cir.1988); Mitroff v. Xonox Corp. 797 F.2d 271, 275 (6th Cir.1986). An abuse of discretion exists only where the reviewing court is certain that a mistake was made. Laney, 901 F.2d at 1321; In re Bendectin, 857 F.2d 290, 307, 322 (6th Cir.1988), cert. denied, 488 U.S. 1006 (1989); Schrand, 851 F.2d at 157. We find that the district court did not abuse its discretion in excluding irrelevant and immaterial evidence.
 
 V.
 
 17
 The judgment of the district court is AFFIRMED.
 
 
 18
 ALAN E. NORRIS, Circuit Judge, dissenting.
 
 
 19
 Because there can be no dispute under the record before this court that sex played a role in the promotion of C. Mary Carlisle, I respectfully dissent.
 
 
 20
 Even if we accept the district court's finding that Carlisle was the best qualified candidate interviewed for the PS VIII position, we cannot ignore the fact that, but for the "augmented certification" procedure, she would not have been in the pool of qualified applicants in the first place. Counsel for the state conceded this point during oral argument.
 
 
 21
 To be eligible for augmented certification, an individual must belong to a protected category which is underrepresented in a particular job classification. In this case, women had been deemed underrepresented and, consequently, Carlisle's application was forwarded to the MDOT hiring committee for consideration. Without the aid of augmented certification, therefore, Carlisle never would have been promoted to the PS VIII position at issue. Under these circumstances, sex was a factor in the hiring decision and the district court's finding to the contrary was clearly erroneous.
 
 
 22
 Because sex did play a role in Carlisle's promotion, this court must determine whether the affirmative action and augmented certification programs used by MDOT pass constitutional muster. In order to withstand strict scrutiny, such programs must represent a narrowly tailored effort to eradicate proven discriminatory conduct by the governmental unit involved. Jackson Bd. of Educ. v. Wygant, 476 U.S. 267, 274 (1986).
 
 
 23
 In our previous consideration of this case, this court noted, "[W]e do not have an adequate factual record before us to make a judgment as to whether the correct relevant labor pool was used [to determine underrepresentation], nor do we have any detailed findings as to how the 1971 report [which initiated the program] addresses the requirements for an adequate finding of past discrimination...." Conlin, 881 F.2d at 816.
 
 
 24
 The 1971 report alluded to by this court in its prior opinion was prepared at the request of Governor Milliken. It reviewed the employment practices of the state of Michigan to determine whether minority groups were properly represented in the workforce. While this report highlighted some disparities in the hiring of minority groups, it did so against the backdrop of a generalized, statewide labor pool. Where, as here, specialized training is required, statistically based presumptions of past discrimination must correlate to the number of relevant minorities qualified to undertake the task. City of Richmond v. J.A. Croson Co., 488 U.S. 469, 501 (1989). Nothing in the record developed below indicates that the 1971 report relied on anything other than a statewide workforce in reaching its conclusions as to past discrimination within discrete governmental units. Thus, standing alone, it does not justify the affirmative action and augmented certification programs employed in this particular case.
 
 
 25
 Of course, the events at issue occurredin 1987, not in 1971. However, the record does not support the state's contention that MDOT looked to the relevant labor pool in 1987 when determining the appropriateness of affirmative action remedies. On the contrary, Charles Ford, director of EEO at MDOT, testified that he helped to prepare the 1986-87 affirmative action plan and that it did not utilize the relevant labor force of college-educated women in real estate sales to determine the trigger for under-representation. Further, the record contains a memorandum from the Michigan Equal Employment and Business Opportunity Council (an entity that participates in the development of affirmative action policy) that states, "At the present time, the system is based on population statistics obtained from census data. An alternative system ... will allow for the use of relevant labor force data in determining standards of availability in those classes which require special expertise." This document is dated April 7, 1989, well after the events before us occurred.
 
 
 26
 In sum, nothing presented in the record or during oral argument demonstrates that MDOT looked to the relevant workforce to determine the appropriateness of its affirmative action program as applied to the narrow facts of this case. In reaching this conclusion, I express no opinion as to the state of Michigan's affirmative action policies as presently implemented. With regard to this plaintiff, however, I believe that the MDOT affirmative action program failed to comply with the constitutional safeguards imposed by Wygant and Croson. Accordingly, I would reverse.