Michael L. HERENDEEN, Plaintiff,

v.

MICHIGAN STATE POLICE, et al., Defendants.

Bradley R. Breedveld, Plaintiff,

v.

Michael Robinson, Defendant.

Nos. 1:97–CV–158, 1:97–CV–452.

United States District Court, W.D. Michigan, Southern Division.

Feb. 3, 1999.

James K. Fett, Marla A. Linderman, Malley & Fett, PC, Ann Arbor, MI, for Plaintiff.

Richard P. Gartner, Asst. Atty. General, John Fitzgerald Szczubelek, Jennifer M. Granholm, Attorney General, Public Employment & Elections Division, Lansing, MI, for Defendants Michigan State Police et al.

John Fitzgerald Szczubelek, Jennifer M. Granholm, Attorney General, Public Employment & Elections Division, Lansing, MI, for Defendant Michael Robinson.

## OPINION

QUIST, District Judge.

Plaintiffs, Michael Herendeen ("Herendeen") and Bradley Breedveld ("Breedveld"), are employed by the Michigan State Police ("MSP") as troopers. Herendeen and Breedveld filed these consolidated actions against the MSP and Colonel Michael Robinson ("Robinson") alleging "reverse discrimination" in promotional eligibility and consideration for promotions in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17, and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983. On June 19, 1998, the Court issued an Opinion and Order in which it granted Defendants' motions for summary judgment on all of Herendeen's claims arising prior to September 30, 1997, and all of Breedveld's claims prior to April 14, 1998, the dates on which the courts in Herendeen's and Breedveld's respective state court discrimination suits granted summary disposition[1] and dismissed their cases. *See Herendeen v.*

*Michigan State Police,* No. 1:97–CV–158, slip op. at 15–18 (W.D.Mich. June 29, 1998).[2] However, the Court also granted Herendeen's and Breedveld's motions to amend to add claims under 42 U.S.C. § 1981, but required them to allege in their amended complaint "which specific promotions they did not achieve and why they did not achieve those promotions." *Id.* at 22. Pursuant to the Court's Order, Herendeen and Breedveld filed their amended complaints. Now before the Court are Defendants' Motions for Dismissal or for Summary Judgment and Plaintiffs' Motions to Amend their Complaint to add a claim based upon the MSP's alleged adjustment of 1997–98 test scores based on race and gender.

### Facts

Herendeen and Breedveld are white males employed by MSP as troopers. Herendeen has been employed by the MSP since June 10, 1979, and Breedveld has been employed by the MSP since approximately November 14, 1977.

Eligibility for promotion to sergeant is determined by a trooper's score on the State Police Sergeant's Promotional Exam. The applicants' scores on the exam are divided into four bands. All first-band troopers are eligible for promotion. However, until June 27, 1994, Michigan Department of Civil Service Administrative Procedure Rules authorized the MSP to use an affirmative action device called "augmented certification" to increase the number of minorities in the first band in certain circumstances. The MSP was authorized to use "augmented certification" when there were less than three available protected group members in the first band by placing up to three protected group members from the lower bands into the pool of eligible troopers. The MSP ceased using "augmented certification" on June

---

1. Summary disposition is the equivalent of summary judgment under the Federal Rules of Civil Procedure.

2. The Court also granted summary judgment and dismissed with prejudice the complaints in *Cremonte v. Michigan State Police,* Case No. 1:97–CV–539 and *Lewis v. Michigan State Police,* Case No. 1:97–CV–553.

27, 1994.[3] However, the 1997 scores of the promotional exam were adjusted so that more minorities would pass the exam, although the MSP denies that it was responsible for adjusting the scores.

Although Herendeen and Breedveld both scored in the top band of the promotional exam and have applied for vacant sergeant positions, neither Plaintiff has been promoted. Plaintiffs allege that since September 30, 1997, and April 14, 1998, the MSP has passed Plaintiffs over for promotions in favor of less-qualified minorities and females on the basis of race and gender. (*See* Herendeen Am.Compl. ¶ 43 & Ex. B.; Breedveld Am.Compl. ¶ 42 & Ex. A.) Plaintiffs contend that race and gender were given consideration pursuant to agency policy established by Defendant Robinson.

## I. *Motions to Dismiss or for Summary Judgment*

### A. *Standards for Dismissal and Summary Judgment*

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2A James W. Moore, *Moore's Federal Practice*, ¶ 12.34[1][b] (3d ed.1997). The Court

need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251, 106 S.Ct. at 2511 (citing *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then dem-

---

**3.** The Court granted summary judgment to Defendants on Plaintiffs' claims of denial of promotional eligibility based upon the use of "augmented certification" in its June 29, 1998, Opinion and Order on the basis that Plaintiffs failed to file administrative complaints with the EEOC within 300 days after the MSP ceased using augmented certification. *See Herendeen*, No. 1:97–CV–158, slip op. at 18–19 (W.D.Mich. June 29, 1998). Therefore, Plaintiffs' denial of promotional eligibility claims are no longer at issue.

onstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)),

### B. *Race and Gender Discrimination*

In Count I of their amended complaints, Plaintiffs allege that Defendants violated Title VII by discriminating against them on the basis of race and gender. In Count III, Plaintiffs allege that Defendants discriminated against them in violation of § 1983 and the Equal Protection Clause. As proof of unlawful discrimination, Plaintiffs allege that the MSP maintains a pattern or practice of discriminating against white males on the basis of race and gender in promotions. Specifically, Plaintiffs contend that in making promotion decisions, MSP managerial employees are required to consider race and gender along with other factors that may be pertinent to the employment decision. Plaintiffs contend that the MSP followed this pattern or practice in the promotions identified in Plaintiffs' amended complaints.

Among other things, Plaintiffs cite testimony given by Robinson in connection with state court proceedings in which Robinson testified that race and gender were factors to be taken into account by MSP managers in making promotional decisions. For instance, in a deposition taken in a state court discrimination case, Robinson testified that "[r]ace and gender are [ ] consideration[s] along with a multitude of other factors which are considered for filling a specific vacancy, and [MSP] managers are expected to take that into consider-

ation along with ... other factors" and that race and gender are "factor[s] to be considered each and every time there's a promotion...." (Robinson Dep. of 1/13/95 in *Cremonte v. Michigan State Police,* No. 94–13442–CM (Mich.Cir.Ct.) at 42, Pl. Herendeen's Resp.Ex. A.; *see also* Robinson Dep. of 4/18/97 in *Lewis v. State of Michigan,* No. 94–3719–NO (Mich.Cir.Ct.) at 30, Pl. Herendeen's Resp.Ex. C.) Robinson also indicated that MSP's "position" was that it "should be reflective of the society which [it] serve[s]," but that the overriding consideration is that the "most suited and most qualified person" should be chosen to fill the vacancy. (Robinson Dep. of 1/13/95 in *Cremonte v. Michigan State Police,* No. 94–13442–CM (Mich.Cir. Ct.) at 42–43, Pl. Herendeen's Resp.Ex. A.) Plaintiffs also cite testimony given by Captain Phillip David Charney, the former Chief Personnel Officer of MSP, and Captain Christopher Hogan, to show that the policy is enforced by lower-level management. (*See* Charney Dep. in *Cremonte v. Michigan State Police,* No. 94–13442–CM (Mich.Cir.Ct.) at 31, Pl. Herendeen's Br. Supp.Mot. Partial Summ.J.Ex. F; 2/5/96 Trial Tr. in *Cremonte v. Michigan State Police,* No. 94–13442–NO (Mich.Cir.Ct.) at 176–77, Pl. Herendeen's Br.Supp.Mot. Partial Summ.J.Ex. G.) Finally, Plaintiffs have offered anecdotal evidence which shows that MSP followed its policy of considering race and gender in making promotion decisions. (*See, e.g.,* Yake Aff., Pl. Herendeen's 2d Suppl.Br.Supp.Mot. Partial Summ.J.Ex. F; Post Dep. in *Reaves v. State of Michigan,* No. 96–43086–CL (Mich.Cir.Ct.) at 10–11, Pl. Herendeen's 2d Suppl.Br.Supp.Mot. Partial Summ.J.Ex. J; Memoranda of 12/4/96 from Slaughter to Robinson and DeBoer, Pl. Breedveld's 3/19/98 Resp. Def.'s Mot.Exs. A, B.)

▉ Defendants contend that they are entitled to summary judgment because Plaintiffs may not prove their individual discrimination claims by demonstrating a pattern or practice of discrimination and Plaintiffs have not offered any evidence to

show that the promotions identified in Plaintiffs' amended complaint were based upon discriminatory considerations. The typical "pattern or practice" discrimination case is brought either by the government or as a class action to establish "that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers." *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 360, 97 S.Ct. 1843, 1867, 52 L.Ed.2d 396 (1977). In such cases, the focus, at least initially, is upon a pattern of discriminatory decision-making, i.e., the company's standard operating procedure, rather than upon individual employment decisions. *See id.* at 360 n. 46, 97 S.Ct. at 1867 n. 46. During the liability stage of a pattern and practice case, the plaintiff is required to prove the existence of a pattern or practice of discrimination, which will usually be shown by "statistical evidence demonstrating substantial disparities in the application of employment actions as to minorities and the unprotected group, buttressed by evidence of general policies or specific instances of discrimination." *Coates v. Johnson & Johnson*, 756 F.2d 524, 532 (7th Cir.1985). "If the employer fails to rebut the government's prima facie case, the resulting finding of a discriminatory pattern or practice gives rise to an inference that all employees subject to the policy were its victims and are entitled to appropriate remedies." *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir.1998) (citing *Teamsters*). The government may seek individual relief in the remedial stage of the proceedings, during which the class has the benefit of the presumption that "any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." *Teamsters*, 431 U.S. at 362, 97 S.Ct. at 1868. To obtain individual relief, "[t]he Government need only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination." *Id.* However, the employer still has the burden of showing that the employment decision was made for lawful reasons. *See id.*

In *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984), the Supreme Court observed:

> The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while "at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking."

*Id.* at 876, 104 S.Ct. at 2799–800 (quoting *Teamsters*). Consistent with the Court's observation in *Cooper*, courts have refused to allow plaintiffs to prove individual discrimination claims through the *Teamsters* pattern and practice framework. *See, e.g., Lowery*, 158 F.3d at 761 (finding that pattern and practice of proof was inapplicable to individual discrimination claims "because the Supreme Court has never applied the Teamsters method of proof in a private, non-class action for employment discrimination, and because the nature of the proof and remedies in class and government pattern or practice actions differs vis-a-vis private, non-class actions"); *Bowdish v. Continental Accessories, Inc.*, No. 1:90–CV–42, 1991 WL 519742, at *7 (W.D.Mich. Mar. 14, 1991) (noting that plaintiff's individual discrimination claim could not be maintained as a pattern and practice case), *aff'd*, 966 F.2d 1451, 1992 WL 133022 (6th Cir.1992); *Taylor v. Secretary of the Army*, 583 F.Supp. 1503, 1509 (D.Md.1984) (concluding that the *Teamsters* rationale is applicable only in class actions or in suits brought by the government and noting that the Supreme Court has never applied the *Teamsters* framework to an individual claim of discrimination).

Evidence that the employer engaged in a pattern or practice of discrimination may be probative of intentional discrimination by an employer, but is insufficient by itself to support a finding of discrimination in an individual discrimination claim. While pattern and practice evidence—statistics and anecdotal evidence of discrimination against minorities in general—is generally admissible in individual discrimination cases, such evidence is merely collateral to proof of specific instances of discrimination which the plaintiff must present to make his prima facie case. *See Williams v. Boorstin*, 663 F.2d 109, 115. n. 38 (D.C.Cir.1980). In *Lowery*, the court found that pattern or practice evidence may be useful in an individual discrimination claim "to prove the fourth element of a prima facie case, that the individual's adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination or that the employer's articulated reasons for the adverse action was merely pretext, or to establish the plaintiff's ultimate burden." *Lowery*, 158 F.3d at 761 (internal citations omitted). However, this case is not a "pattern or practice" case, and Plaintiffs may not rely on the *Teamsters* framework as the sole basis for proving their discrimination claims.

Plaintiffs may establish their prima facie case of disparate treatment by introducing either credible, direct evidence of discriminatory intent or through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 862–63 (7th Cir.1997); *Huguley v. General Motors Corp.*, 52 F.3d 1364, 1371 (6th Cir.1995). "[D]irect evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was least a motivating factor.' With direct evidence, the existence of unlawful discrimination is 'patent.'" *Bartlik v. United States Dep't of Labor*, 73 F.3d 100, 103 n. 5 (6th Cir.1996) (citation omitted); *see also Lautner v. American Tel. & Tel. Co.*, No. 95–3756, 1997 WL 26467, at *3 (6th Cir. Jan. 22, 1997) (stating that " '[d]irect evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions' ") (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir.1996)).

Plaintiffs contend that their discrimination claims must survive summary judgment because they have presented direct evidence of discrimination, namely, Robinson's testimony that MSP managers were required to take race and gender into consideration in making decisions about which troopers to promote and that the MSP's maintained a policy that its racial makeup should reflect that of the society which it serves. Plaintiffs cite, among others, the case of *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241 (6th Cir. 1995), as support for their assertion that Robinson's statements constitute direct evidence of discrimination. In *Talley*, the plaintiff, who alleged that he was terminated from his employment at a restaurant because he was black, presented evidence that the owners of the restaurant occasionally made disparaging remarks about blacks. The court held that such evidence constituted direct evidence of discrimination. *See id.* at 1249. In reaching its conclusion, the court relied on two cases from the Eleventh Circuit, *Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir.1985), and *Lee v. Russell County Board of Education*, 684 F.2d 769 (11th Cir.1982). In *Miles*, the court held that racial slurs about the work abilities of blacks by a manager who had influence in hiring and firing decisions constituted direct evidence of discrimination. *See Miles*, 750 F.2d at 873–76. In *Lee*, the plaintiffs alleged that the defendant discriminated against them on the basis of race in its decision not to rehire them. The principal and the superintendent of education for the county both testified that there was no valid administrative

reason not to rehire the plaintiffs and that race was a factor in the decisions not to rehire the plaintiffs. *See Lee*, 684 F.2d at 771. In addition, evidence was presented that school board members and a past principal sought to maintain a "white presence" to avoid white flight. *See id.* at 775. Based upon the holdings in *Miles* and *Lee*, the *Talley* court concluded that the plaintiff's evidence of racist comments by the owners "constitute[d] direct evidence that plaintiff's termination may have been racially motivated." *Talley*, 61 F.3d at 1249.

In *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397 (7th Cir.1996), the plaintiff alleged that she was terminated from her position as a customer service representative because of her age. The plaintiff offered evidence that her supervisor and his immediate supervisor made statements which demonstrated their preference for hiring younger customer services representatives. The Seventh Circuit rejected the plaintiff's argument that the statements constituted direct evidence of discrimination because the plaintiff did not show that the statements were in any way linked to the decision to terminate her employment. *See* 82 F.3d at 1403. The court noted that while the evidence showed that age may have played a role in the defendant's hiring practices, it did not establish that age was a factor in management's treatment of existing customer service representatives. *See id.* at 1404.

In this case, Plaintiffs' evidence consists of statements from the MSP's chief policy maker that managerial employees were expected to take race and gender into consideration in determining which troopers to promote—the employment action at issue in this case. Testimony from lower-level officer and other evidence demonstrates that this policy was put into effect when promotion decisions were made. Robinson's statements are similar to those of the school officials in *Lee* and, unlike the state-

ments at issue in *Fuka*, concern the employment decision at issue. Moreover, although Defendants contend that Plaintiffs have not shown that Robinson's policy was not implemented by the decisionmakers who made the promotion decisions at issue, it may be reasonably inferred that Robinson, as the head of the MSP, made policies that were expected to be and were in fact followed within the MSP. *See Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 54 (3d Cir.1989), *overruled on other grounds*, as recognized by *Antol v. Perry*, 82 F.3d 1291, 1301 (3d Cir.1996).[4]

■ Plaintiffs may also rely on evidence which, although barred by the statute of limitations or the doctrine of claim preclusion as independently actionable conduct, is admissible to prove motive or intent. *See Black Law Enforcement Officers Ass'n v. City of Akron*, 824 F.2d 475, 483 (6th Cir.1987); *Jordan v. Wilson*, 649 F.Supp. 1038, 1046 (M.D.Ala.1986) (mem. op.). Thus, evidence of promotion decisions that were based upon race or gender which occurred prior to the dates the judgments in Plaintiffs' state court cases were issued would be relevant to show background circumstances bearing upon Defendants' intent to discriminate on the basis of race and/or gender, even though such incidents cannot serve to establish a substantive violation. Likewise, evidence pertaining to the use of augmented certification is admissible on the issue of Defendants' intent, even though the Court has dismissed Plaintiffs' claims based upon the use of augmented certification.

■ Because Plaintiffs have presented direct evidence of discrimination, it is not necessary to consider their case under the *McDonnell Douglas* framework. However, even if Plaintiffs had not presented direct evidence, they have presented sufficient evidence to establish a prima facie case under *McDonnell Douglas*. To establish a prima facie case under *McDon-*

---

4. Because Plaintiffs have presented direct evidence of discrimination, they are not required to present proof within the *McDonnell Doug-* las evidentiary framework. *See Talley*, 61 F.3d at 1248 (quoting *Terbovitz v. Fiscal Court*, 825 F.2d 111, 114–15 (6th Cir.1987)).

*nell Douglas,* a plaintiff must show that: (i) he is a member of a protected class; (ii) he was qualified for the promotion; (iii) he was rejected; and (iv) the position remained open or was filled with a non-minority. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Reynolds v. School Dist. No. 1, Denver, Colo.,* 69 F.3d 1523, 1534 (10th Cir.1995). If the plaintiff establishes a prima facie case, a presumption of intentional discrimination arises, and the burden then shifts to the defendant to set forth " 'a legitimate, nondiscriminatory reason' ... for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (emphasis in original) (citations omitted) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)). If the defendant meets its burden of production, the plaintiff must then prove by a preponderance of the evidence that the defendant's conduct was motivated by unlawful discrimination rather than by the reasons articulated by the defendant. *See Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 883 (6th Cir.1996) (citing *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94).

 Because Plaintiffs are white males claiming reverse discrimination, under the law of this Circuit Plaintiffs must satisfy a different test to make a prima

facie case. "In a case of reverse discrimination, the presumption that the circumstances which normally make out a prima facie case are indicative of discrimination is not available, absent a showing that 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.' " *Jasany v. United States Postal Serv.,* 755 F.2d 1244, 1252 (6th Cir.1985) (quoting *Parker v. Baltimore & Ohio R.R. Co.,* 652 F.2d 1012, 1017 (D.C.Cir.1981)); *accord Boger v. Wayne County,* 950 F.2d 316, 325 (6th Cir.1991) (citing *Jasany* ).[5] However, even under this heightened standard, the Court finds that Plaintiffs have presented evidence of background circumstances which support a suspicion that Defendants discriminate against the majority. Specifically, Plaintiffs have presented evidence that the MSP considered race and gender as factors in promotions and that it sought to maintain a force that reflected the racial makeup of the population it served. In addition, Plaintiffs have alleged that their qualifications were superior to those of the minority and female candidates who received the promotions in question, which is sufficient to establish the requisite "background circumstances" in a reverse discrimination claim. *See Harding v. Gray,* 9 F.3d 150, 153 (D.C.Cir. 1993). Thus, the Court finds that Plaintiffs have established a prima facie case under the *McDonnell Douglas–Jasany* method of proof. Defendants have not articulated in their motion a legitimate,

---

**5.** Other Sixth Circuit panels have expressed "serious misgivings about the soundness of [the *Jasany* ] test which imposes a more onerous standard for plaintiffs who are white or male than for their non-white or female counterparts." *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 801 n. 7 (6th Cir.1994). This Court joins those misgivings. Attitudes and the political balance in some public entities have substantially changed since 1964 and 1985, leading to situations wherein "affirmative action" or "achieving diversity" are the norm rather than the exception. *See, e.g., Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267, 276, 106 S.Ct. 1842, 1848, 90 L.Ed.2d 260 (1986) (finding that "[s]ocietal discrimination,

without more, is too amorphous a basis for imposing a racially classified remedy" and holding invalid layoff plan favoring minority teachers over non-minority teachers); *Wessmann v. Gittens,* 160 F.3d 790, 808 (1st Cir. 1998) (finding school admissions policy using set-asides based upon racial/ethnic considerations as violative of the Equal Protection Clause); *Middleton v. City of Flint,* 92 F.3d 396, 413 (6th Cir.1996) (holding unconstitutional city's affirmative action plan requiring 50% of all police officers promoted to sergeant to be members of specified minorities). Nonetheless, the standard adopted in *Jasany* remains the law in the Sixth Circuit.

non-discriminatory reason for failing to promote Plaintiffs. Moreover, Defendants have not offered any justification for or attempted to defend their use of race or gender in ensuring promotional parity or making promotional decisions on the basis that it is necessary to remedy the effects of past discrimination. *See Middleton v. City of Flint,* 92 F.3d 396, 406 (6th Cir. 1996) (holding "that a disparity between the percentage of a protected class employed in a particular workforce or occupation and the raw percentage of class members in a regional labor pool, standing alone, cannot be 'a strong basis in evidence' sufficient to justify hiring or promotion quotas"). Therefore, the Court will deny Defendants' motions with respect to Counts I and III of Plaintiffs' amended complaints.

## II. *Retaliation Claim*

In Count II of their amended complaints, Plaintiffs allege that Defendants retaliated against them in violation of Title VII for filing complaints with the Equal Opportunity Employment Commission and their complaints in this case. Defendants contend that Plaintiffs' retaliation claims must be dismissed because Plaintiffs' allegations do not support a prima facie case of retaliation.

In order to allege a retaliation claim, a plaintiff must plead the following elements: (i) that he was engaged in activity protected by Title VII; (ii) that he was the subject of an adverse employment action; and (iii) that there was a causal connection between the protected activity and the adverse employment action. *See Johnson v. United States Dep't of Health & Human Servs.,* 30 F.3d 45, 47 (6th Cir. 1994); *EEOC v. Ohio Edison Co.,* 7 F.3d 541, 543 (6th Cir.1993). Plaintiffs allege in

their amended complaints that since the time they filed their complaints with the EEOC, Defendants have retaliated against them by denying them the promotions identified in their amended complaints. In addition, Plaintiffs also allege that Defendants would not have retaliated against them had they not filed their EEOC complaints and their complaints in this case. Based upon these allegations, the Court finds that Plaintiffs have sufficiently alleged a retaliation claim. According to Plaintiffs' allegations, they engaged in protected activity by filing their EEOC complaints and this action and they suffered an adverse employment action—denial of promotions—as a consequence of engaging in the protected activity. Plaintiffs' allegations, if supported by competent evidence, would support a retaliation claim and therefore suffice to withstand a motion to dismiss.[6] Therefore, the motions will be denied with regard to Plaintiffs' retaliation claims.

## III. *Section 1981 Claim*

Plaintiffs allege in Count IV of their amended complaints that Defendants violated 42 U.S.C. § 1981 by maintaining a policy of discriminating against whites in employment decisions on account of their race. Section 1981(a) provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

6. Defendants' reliance on *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304 (6th Cir.1989) is misplaced. In *Booker,* the court was reviewing the plaintiff's retaliation claim under the summary judgment standard and considered evidence submitted by the defendant which showed that there was no causal connection between the protected activity and the adverse employment action. *See id.* at 1314. Unlike the defendant in *Booker,* Defendants in this case have not submitted any evidence to show a lack of a causal connection.

42 U.S.C. § 1981(c). Defendants contend that Plaintiffs' § 1981 claims must be dismissed because states may not be sued under § 1981 and because § 1981 may not be used to assert reverse discrimination claims.

Defendants' contention that white persons lack standing to sue under § 1981 for reverse discrimination must be rejected. In *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), the Supreme Court observed that the legislative history of § 1981 established that the statute was intended "to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race," including white citizens. *See id.* at 295–96, 96 S.Ct. at 2586. Following the Court's statements in *McDonald,* the Sixth Circuit has held that § 1981 prohibits discrimination on the basis of race against all persons, including whites. *See Winston v. Lear–Siegler, Inc.,* 558 F.2d 1266, 1268 (6th Cir.1977). The Court finds nothing in the cases cited by Defendants, *Jones v. Alfred Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), and *Long v. Ford Motor Co.,* 496 F.2d 500 (6th Cir.1974), that supports Defendants' argument.

Defendants' second argument is more persuasive. States are immune from suit under § 1981 by virtue of the Eleventh Amendment. *See Freeman v. Michigan Dep't of State,* 808 F.2d 1174, 1179 (6th Cir.1987). Plaintiffs concede that they may not sue the MSP, which is an agency of the State of Michigan, under § 1981 and that their § 1981 claims against the MSP must be dismissed. However, Plaintiffs correctly argue that they may maintain their § 1981 claims against Robinson in his individual capacity. *See Hafer v. Melo,* 502 U.S. 21, 27, 112 S.Ct. 358, 363, 116 L.Ed.2d 301 (1991) (holding that a § 1983 claim may be brought against a state official in his individual capacity for actions taken in their official capacity). Therefore, the Court will allow Plaintiffs to amend their com-

plaint to add Robinson as the defendant in his individual capacity in their § 1981 claims. The § 1981 claims will be dismissed with respect to the MSP.

## IV. *Motions to Amend*

Plaintiffs have moved to amend their complaints to add a claim under § 703(*l*) of Title VII, 42 U.S.C. § 2000e–2(*l*) on the basis of the adjustment of the 1997 test scores. Defendants have not responded to Plaintiffs motion, although apparently believing that Plaintiffs had already asserted the claim, Defendants raised several grounds in their motions for dismissal of the claim. Therefore, the Court will consider those arguments as responsive to Plaintiffs' motions to amend.

Under 42 U.S.C. § 2000e–2(*l*), employers are prohibited

> in connection with the selection or referral of applicants or candidates for employment or promotion, [from] adjust[ing] the scores of, use different cutoff scores for, or otherwise alter the result of, employment related tests on the basis of race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(*l*). Plaintiffs contend that the MSP violated § 2000e–2(*l*) by adjusting the 1997 test scores in order to pass more minorities.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." Defendants have not objected to Plaintiffs' proposed amendment on the grounds of delay, lack of notice, or substantial prejudice, nor does the Court find any basis for denying Plaintiffs' motion on these grounds. Nonetheless, the Court must review Plaintiffs' proposed claims to determine whether they would be futile. *See Bower v. Jones,* 978 F.2d 1004, 1008 (7th Cir.1992). Where the proposed claim could not withstand a motion to dismiss or a motion for summary judgment, amendment should not be per-

mitted. *See Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1041 (6th Cir.1991).

▪ Defendants do not dispute that the 1997 test scores were adjusted in order to pass more minorities, but they contend that Plaintiffs' proposed claim must fail because the Michigan Civil Service Department ("MCSD"), rather than MSP or Robinson, has exclusive authority to adjust the test scores. Defendants cite *Conlin v. Blanchard,* 745 F.Supp. 413 (E.D.Mich. 1990), *aff'd* 947 F.2d 944, 1991 WL 224081 (6th Cir.1991) (per curiam), in which the court found that the MCSD has the exclusive constitutional authority to determine which candidates are eligible for promotion, and contend that this Court is bound by the *Conlin* court's ruling under the doctrine of *stare decisis.* The *Conlin* court's decision is not binding on this Court because " '[t]he doctrine of stare decisis does not compel one district court judge to follow the decision of another.' " *Threadgill v. Armstrong World Indus., Inc.,* 928 F.2d 1366, 1371 (3d Cir.1991) (quoting *State Farm Mut. Auto. Ins. Co. v. Bates,* 542 F.Supp. 807, 816 (N.D.Ga. 1982)). Even if this Court was bound by the *Conlin* decision, it is not determinative on the issue of whether the MCSD adjusted the exam scores at the urging of the MSP. Plaintiffs have presented evidence which tends to show that the MCSD adjusted the exam scores at the behest of the MSP in order to provide the MSP with a larger pool of minority candidates for promotion. (*See* Khol Dep. at 41–42, Pl. Herendeen's Mot. Amend Ex. B (testifying that the exam scores were adjusted "to restore to State Police in some measure their prerogatives ... to select for promotion ... the individuals that they thought were most qualified for those positions"); Cremonte Dep. at 3–6, Pl. Herendeen's Mot. Amend Ex. D.) Based upon this evidence, the Court finds that Plaintiffs may be able to prove that MSP was responsible for the adjustment of the 1997 exam scores and that such act violated § 2000e–2(*l*).

Defendants also contend that Plaintiffs' claim fails because Plaintiffs cannot show that a minority candidate who became eligible for promotion as a result of the exam adjustment was actually promoted. The Court cannot accept this argument, at least at this stage, because Defendants have not presented any evidence showing that none of the minority troopers who received the promotions at issue benefitted from the adjusted exam scores. On the other hand, Plaintiffs assert, without evidentiary support, that Defendants promoted nine minority troopers based upon the 1997 exam results, five of whom had scores that would not have been in the first band without adjustment of the scores. Thus, based upon the record and the assertions by Plaintiffs in their briefs, the Court finds that Plaintiffs may be able to show that minority candidates benefitted from the adjusted test scores to Plaintiffs' detriment. Therefore, the Court will grant the motion.

### *Conclusion*

For the foregoing reasons, the Court will grant in part and deny in part Defendants' Motions to Dismiss or for Summary Judgment and will grant Plaintiffs' Motions to Amend Complaint. The Court will grant Defendants' motion with regard to the § 1981 claim against the MSP under Count IV and will deny the motion in all other respects. Plaintiffs will also be granted leave to amend their complaint to add Robinson as the defendant under the § 1981 claim.

### *ORDER*

In accordance with the Opinion filed this date,

**IT IS HEREBY ORDERED** that Defendants' Motions for Dismissal or Summary Judgment (docket no. 70 in Case No. 1:97–CV–158 and docket no. 47 in Case No. 1:97–CV–452) are **GRANTED IN PART AND DENIED IN PART.** Defendants' motions are **GRANTED** with respect to Plaintiffs claims against Defen-

**912**

dant Michigan State Police under 42 U.S.C. § 1981 in Count IV of Plaintiffs' amended complaints and those claims against the Michigan State Police are **DISMISSED WITH PREJUDICE.** Plaintiffs are granted leave to amend their complaints within thirty (30) days of this Order to substitute Defendant Robinson as the Defendant in their § 1981 claims. Defendants' motions are **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Plaintiffs' Motions to Amend Complaint (docket no. 75 in Case No. 1:97–CV–158 and docket no. 53 in Case No. 1:97–CV–452) are **GRANTED,** and Plaintiffs shall file their amended complaints asserting claims under 42 U.S.C. § 2000e-2($l$) within thirty (30) days.