Mariah V. REED, Plaintiff,

v.

**NELLCOR PURITAN BENNETT,**
Defendant.

Civil Action No. 98–2313–CM.

United States District Court,
D. Kansas.

Feb. 4, 2003.

Michael D. Cole, Thompson Coburn, LLP, St. Louis, MO, Richard Helfand, Panethiere & Helfand, Kansas City, MO, for plaintiff/counter-defendant.

Thomas N. Sterchi, Mary C. O'Connell, Linda Koch Marshall, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, for defendant/counter-claimant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Upon direction from the Tenth Circuit Court of Appeals in its December 6, 2002 order in *Reed v. Bennett,* 312 F.3d 1190 (10th Cir.2002), this court hereby vacates its March 23, 2001 order (Doc. 105) wherein it granted defendant's summary judgment motion and its March 27, 2001 order (Doc. 107) entering judgment against plaintiff.

This case arises out of plaintiff's employment by defendant Nellcor Puritan Bennett ("Nellcor"). Plaintiff filed suit against defendant Nellcor,[1] alleging she was discriminated against on the basis of a disability and retaliated against for exercising her protected rights, all in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* and the Kansas Act Against Discrimination (KAAD), Kan. Stat. Ann. § 44–1001, *et seq.* Plaintiff further alleges she was unlawfully retaliated against under Kansas state law for filing a claim of compensation with the Kansas Division of Workers' Compensation. In its answer, defendant Nellcor filed a counterclaim against plaintiff alleging breach of a severance agreement.

Following the Tenth Circuit's order, pending once again before the court is defendant Nellcor Puritan Bennett's Motion for Summary Judgment (Doc. 87). In this motion, defendant Nellcor seeks the court to enter an order granting summary judgment as a matter of law against plaintiff. Also pending once again before the court is defendant Nellcor's Motion to Dismiss for Failure to Comply with the

---

1. Plaintiff also filed suit against defendant Mallinckrodt, Inc. d/b/a Nellcor Puritan Bennett. However, on December 28, 1999, the court granted plaintiff's motion to dismiss defendant Mallinckrodt, Inc. without prejudice.

Court's Order to Mediate (Doc. 99). In its motion to dismiss, defendant Nellcor seeks to have all claims asserted against it dismissed with prejudice.

The Tenth Circuit remanded the case back to this court with direction "either to consider Nellcor's uncontested motion [for summary judgment] to determine if Nellcor met its initial burden of production under Fed.R.Civ.P. 56(c), or to set forth analysis of the *Meade* factors supporting the court's entry of judgment as a sanction." *Reed*, 312 F.3d at 1196 (referencing *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir.1988)).

As set forth below, upon an application of the Rule 56 standard to defendant Nellcor's pending motion for summary judgment, the court finds that defendant Nellcor is entitled to judgment as a matter of law on each of plaintiff's claims asserted against it.

### ● Facts

■ Despite an enlargement of the response time, plaintiff failed to file a response to defendant Nellcor's motion for summary judgment within the time specified by District of Kansas Rule 7.1(b) and Federal Rule of Civil Procedure 6(e), or otherwise. Accordingly, plaintiff has "waive[d] the right to respond or to controvert the facts asserted in the summary judgment motion." *Id.* at 1195. Therefore, the court will "accept as true all material facts asserted [by defendant] and properly supported in the summary judgment motion." *Id.* Applying this standard, the court finds the facts material to the pending summary judgment motion are as follows.

### ● Plaintiff's Employment with Defendant Nellcor

Plaintiff began her employment with defendant Nellcor in 1986. In December 1995, plaintiff was diagnosed with carpal tunnel syndrome and ulnar neuropathy. Subsequently, in December 1995 and February 1996, plaintiff underwent procedures addressing these conditions. Defendant filed an Employer's Report of Accident with the Kansas Worker's Compensation office on October 24, 1995. The report indicates an accident involving plaintiff occurred on defendant's premises and resulted in "back/shoulder/neck strain" to plaintiff. Subsequently, on December 26, 1995, plaintiff filed a worker's compensation claim.

On February 17, 1997, Pat Cavanah with defendant Nellcor's Human Resources Department advised plaintiff that her position was being eliminated and that defendant Nellcor was "letting people go." On February 19, 1997, Ms. Cavanah notified plaintiff that her employment as a precision measurement specialist would end effective March 21, 1997. Ms. Cavanah affirmed under oath that plaintiff's employment was terminated, effective March 21, 1997 because of a reduction in work force, job elimination, and a plant consolidation.[2]

### ● Severance Agreement

In connection with the termination of her employment, on March 26, 1997, plaintiff and defendant Nellcor entered into a Severance Agreement, Release and Waiver of Claims (hereinafter "Agreement"). Plaintiff received the Agreement on March 22, 1997. Plaintiff signed the Agreement on March 26, 1997. As a result of signing the Agreement, plaintiff received a lump sum payment of

---

**2.** The record evidence shows that defendant underwent a series of structural and business changes beginning in January 1995 that argu-

ably affected plaintiff's employment. Given the court's analysis herein, the court finds the details of these changes are not material.

$20,056.80 from defendant Nellcor. This payment included severance pay, candidate bank pay and outplacement fees. Plaintiff read the Agreement before she signed it. Plaintiff understood the Agreement when she read it. Plaintiff was given thirty days to consider the Agreement. Defendant Nellcor advised plaintiff to consult with an attorney prior to signing the Agreement. Plaintiff consulted with an attorney about the Agreement before she signed it. No representative of defendant Nellcor threatened plaintiff regarding her signing of the Agreement.

The Agreement provides that plaintiff:

unconditionally release Nellcor Puritan Bennett and Nellcor Puritan Bennett's affiliates, and their successors and assigns, and all of their past and present employees, officers, directors, and agents from any and all claims you have or may have had against any of them prior to the date you sign this Agreement, to the maximum extent permitted by law.

The Agreement further provides that:

[t]his release includes, but is not limited to, (i) any and all claims relating to or arising from your employment relationship with Nellcor Puritan Bennett or the termination of that relationship ... (iii) any and all claims which are related to or concern discrimination under local, state, or federal law, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the American[s] with Disabilities Act ... (iv) any and all claims arising out of any other laws and regulations relating to employment or employment discrimination; and (v) any and all claims for attorneys' fees and costs.

### ● The April 7, 1997 Job Posting

As part of the termination of plaintiff's employment, defendant placed plaintiff in a candidate job bank. Plaintiff was placed in a candidate bank from February 20, 1997 to March 21, 1997. While plaintiff was in the candidate bank she could apply for jobs for which she was qualified. Plaintiff was never told that someone from defendant Nellcor would call her to let her know if there were any positions open. She was told she could call in to check job postings at the defendant's facility. Defendant posted the job of First Article Inspector on April 7, 1997.

### ● Plaintiff's Claims

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and the Kansas Human Rights Commission on December 10, 1997, asserting that defendant terminated her employment on the basis of her asserted disability, in violation of the ADA. Subsequently, plaintiff filed this lawsuit asserting disability and retaliation claims under the ADA and KAAD, and a state law retaliation claim.

### ● Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if

"there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, depo-

sition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## ● Effect of Release and Waiver Agreement on Plaintiff's Claims

Plaintiff appears to allege that defendant Nellcor violated her rights under the ADA, the KAAD, and state retaliation law by (1) downsizing plaintiff's position in July 1996 and transferring her to another position; (2) terminating plaintiff's employment in February 1997; and (3) failing to inform plaintiff of a job opening posted on April 7, 1997.[3]

### A. Waiver

Defendant asserts that plaintiff's claims are barred by the Agreement signed at the termination of her employment. Specifically, defendant asserts that by signing the Agreement and agreeing to its terms, plaintiff waived her right to file suit for claims of disability discrimination and retaliation under the ADA, KAAD, and state retaliation law.

An employee may waive potential employment discrimination claims by

**3.** The court notes that although a pretrial order has been entered in this case as of the date of the present order, at the time defendant filed its Motion for Summary Judgment which is currently under consideration by the court, no pretrial order had been entered. Accordingly, defendant Nellcor based its arguments on the allegations set forth in plaintiff's Complaint, rather than any modification of those allegations as set forth in the Pretrial Order. An examination of the Pretrial Order shows that plaintiff arguably abbreviated the basis for her claims against defendant Nell-

cor. Plaintiff's Complaint alleges all three allegedly wrongful acts by defendant Nellcor, as set forth above, in support of her claims. (Pl.'s Compl. at 1–5). However, in the Pretrial Order plaintiff alleges only defendant Nellcor's alleged "fail[ure] to inform [plaintiff] of a job opening posted and filled by the Defendant on April 7, 1997" as a basis for her claims. (Pretrial Order at ¶ 4.0(a)). Given the timing of the court's consideration of the present motion, the court will consider all three bases for plaintiff's claims.

agreement so long as the employee's waiver of such claims is knowing and voluntary. *Torrez v. Pub. Serv. Co. of N. M., Inc.*, 908 F.2d 687, 689 (10th Cir.1990) (examining waiver of Title VII and 42 U.S.C. § 1981 claims); *Rivera–Flores v. Bristol–Myers Squibb Caribbean*, 112 F.3d 9, 12 (1st Cir. 1997) (examining waiver of ADA claims). If the employee's waiver is knowingly and voluntarily made, the agreement will be enforced, absent a finding of fraud, duress, lack of consideration, or mutual mistake. *Id.; Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1229 (10th Cir.1999).

■ When assessing an employee's knowledge and the voluntariness of a waiver, the Tenth Circuit has instructed that the court must look at the "totality of the circumstances." *Torrez*, 908 F.2d at 690. That is, the court must look beyond the contractual language itself and consider all relevant factors, including:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Id.* at 689–90 (citing *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir.1988)).

● **Application of Factors**

■ The court now examines each factor to determine whether, as a matter of law, plaintiff has knowingly and voluntarily waived her right to sue under the ADA, KAAD and state retaliation law. The court notes that "[w]aiver and release are affirmative defenses on which the employer bears the burden." *Rivera–Flores*, 112 F.3d at 12; Fed.R.Civ.P. 8(c); *see also Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 437–38 (7th Cir.1997) (placing the burden of proof on employer but burden of production on employee to "come forward with specific evidence sufficient to raise a question as to the validity of the release under the totality approach").

First, the court finds that the language of the Agreement is clear and simple. Although the Agreement contains some "legalese" such as reference to "successors and assigns," the court finds that the language is not overly burdensome to decipher. The Agreement generally references that plaintiff releases "any and all claims" she had or may have had against defendant prior to the date she signed the Agreement. The Agreement further specifies that plaintiff waives claims "relating to or arising from [her] employment relationship with Nellcor Puritan Bennett or the termination of that relationship." Moreover, as relevant here, the Agreement specifies that plaintiff waives claims "related to or concern[ing] discrimination under ... the Americans with Disabilities Act," claims "related to or concern[ing] discrimination under state law," claims regarding "wrongful discharge of employment," and claims "arising out of other laws ... relating to employment." This reference to specific laws emphasizes the Agreement's clarity.

Second, the court finds that plaintiff's education and business experience are sufficient to allow the presumption that plaintiff was able to understand the implications of signing the Agreement. The record evidence shows that plaintiff attended community college and anticipated graduating with a degree in the Fall of 2000.

Third, the court finds that the thirty days provided to plaintiff for consideration of the Agreement is sufficient here. The Tenth Circuit has found a lesser period of time presumptively "reasonable and non-coercive." *White v. Gen. Motors Corp.*, 908 F.2d 669, 672 (10th Cir.1990) (finding fourteen day period presumptively appropriate under Kansas law).

Fourth, the court finds the record evidence establishes that plaintiff knew her rights upon execution of the release. Plaintiff testified that she read the Agreement and, more importantly, that she understood the Agreement prior to signing it. Fifth, the Agreement itself advised plaintiff to consult with an attorney prior to signing the Agreement. Plaintiff testified that she did, in fact, consult with an attorney prior to signing the Agreement. Sixth, the record does not establish whether there was an opportunity for negotiation of the terms of the Agreement. Upon review of the Agreement as presented to plaintiff, it appears as though negotiation may not have been welcomed.

Finally, there is no evidence to establish that the consideration provided to plaintiff in exchange for the waiver and accepted by plaintiff exceeded the benefits to which the employee was already entitled to by contract or law.

● **Conclusion**

In assessing the totality of the circumstances in this case, the court concludes that no genuine issue of material fact remains regarding whether plaintiff knowingly and voluntarily waived any and all potential claims she had against defendant Nellcor "prior to the date [she] sign[ed] th[e] Agreement," as specified in the Agreement. As relevant here, the court finds that defendant Nellcor has met its burden to establish that plaintiff knowingly and voluntarily waived claims that had accrued as of March 26, 1997—the date she signed the Agreement—for discrimination and retaliation under the ADA, the KAAD, and state retaliation law. Defendant's motion is granted on this basis.

However, defendant's motion is denied to the extent it seeks the court to find that plaintiff knowingly and voluntarily waived claims under the ADA, the KAAD, or state retaliation law, that arise from defendant's alleged failure to notify plaintiff of the April 7, 1997 job posting. The court finds that these claims accrued after the date plaintiff signed the Agreement, and therefore, that these claims are not covered by the Agreement's terms.

● **ADA and KAAD Claims**

Following the court's finding on defendant's waiver argument, the plaintiff's claims of discrimination and retaliation under the ADA and KAAD remain to the extent they arise from defendant's alleged failure to notify plaintiff of the April 7, 1997 job posting. Defendant contends that plaintiff cannot establish a prima facie case of disability discrimination or retaliation under the ADA or KAAD.

● **Disability Discrimination**

● **Applicable Law**

The ADA prohibits a covered entity from discriminating against a "qualified individual with a disability" because of the individual's disability with respect to terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Pack v. Kmart Corp.*, 166 F.3d 1300, 1302 (10th Cir.1999) (quoting 42 U.S.C. § 12111(8) and citing *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995)).

■ Thus, to establish a prima facie case under the ADA, plaintiff must demonstrate that: (1) she is disabled within the meaning of the ADA; (2) she is qualified, that is, with or without reasonable accommodation, she is able to perform the essential functions of the job; and (3) she was discriminated against because of her disability. *See Pack,* 166 F.3d at 1302 (citing *Siemon v. AT & T Corp.,* 117 F.3d 1173, 1175 (10th Cir.1997) and *White,* 45 F.3d at 360–61); *Aldrich v. Boeing Co.,* 146 F.3d 1265, 1269 (10th Cir.1998) (citing same).

■ Once plaintiff establishes her prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *See Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *EEOC v. Flasher Co.,* 986 F.2d 1312, 1317–19 (10th Cir.1992)). If defendant comes forward with a nondiscriminatory reason for its actions, the burden then reverts to plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual-i.e., unworthy of belief." *Id.* (citing *Ingels v. Thiokol Corp.,* 42 F.3d 616, 622 (10th Cir.1994)). If plaintiff proffers such evidence, the motion for summary judgment must be denied.[4] *Id.* The plaintiff's burden "is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief." *Morgan,* 108 F.3d at 1321 (citation omitted).

This same burden shifting framework applies to plaintiff's disability discrimination claims under the KAAD. *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1403 n. 3 (10th Cir.1997) (applying same standards and burdens to ADA and KAAD claims) (citing *Woods v. Midwest Conveyor Co.,* 231 Kan. 763, 766, 648 P.2d 234, 238–39 (1982)). Similar to the ADA, the KAAD seeks to end discrimination by reason of disability in all employment relations covered by the Act. Kan. Stat. Ann. § 44–1001. It is unlawful under the KAAD for an employer, because of the disability of an employee, to discharge or otherwise discriminate against the employee in the terms or conditions of employment. *Id.* § 44–1009(a)(1); *Sandlin v. Roche Labs., Inc.,* 268 Kan. 79, 82–83, 991 P.2d 883, 886 (1999).

● **Discussion**

■ As set forth below, the court finds that plaintiff has not established a prima facie case of disability discrimination. In addition, even if the court were to assume plaintiff established a prima facie case, plaintiff has not come forward with sufficient facts from which a reasonable jury could conclude that defendant's preferred reasons for not notifying plaintiff of the April 7 job posting were pretextual and unworthy of belief.

Assuming plaintiff were able to establish the first and second elements of her prima facie case—that she is a qualified individual with a disability within the meaning of the ADA—the court finds that plaintiff cannot establish the third element of her prima facie case—that defendant discriminated against her because of her disability. This element requires plaintiff "to present some affirmative evidence that disability was a determining factor in the employer's decision." *Morgan,* 108 F.3d at 1323. Although this burden is "not onerous," it is also "not empty or perfunctory." *Id.*

---

**4.** The *McDonnell Douglas* burden-shifting analysis is appropriate in disability discrimination cases where, as here, the plaintiff has no direct evidence of discrimination and the employer disclaims reliance on the plaintiff's disability for an employment decision. *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 n. 3 (10th Cir.1997).

Plaintiff contends that defendant "failed to inform her of a job opening posted and filled by Defendant on April 7, 1997 for a job with identical duties to those previously performed by Plaintiff." (Pretrial Order at ¶ 4.0(a)). However, the record evidence shows that defendant was under no obligation to inform plaintiff of the April 7 job posting. Defendant presented evidence that it was under no obligation to allow plaintiff to learn of the April 7, 1997 job posting through the candidate bank or to self-nominate for that job posting as of April 7, 1997. Pursuant to the Severance Agreement, plaintiff was placed in a candidate bank for up to 30 days prior to her actual separation from the company. Accordingly, plaintiff was placed in the candidate bank from February 20, 1997 to March 21, 1997.[5] While in the candidate bank, plaintiff was able to self-nominate for jobs for which she was qualified. Plaintiff admitted that she was never told that someone with the company would call her to inform her of any open positions while she was in the candidate bank. Instead, she was told that she could call in to check job postings in the facility. Accordingly, the evidence shows that defendant was under no obligation to inform plaintiff of any job posting, much less the April 7 job posting. Moreover, plaintiff has set forth no evidence to show that defendant's failure to voluntarily inform her of the April 7 job posting was causally connected to her "disability."

Accordingly, the court finds that plaintiff has failed to offer any affirmative evidence that her disability was a determining factor in defendant's decision not to notify her of the April 7, 1997 job posting. Even if plaintiff were able to establish a prima facie case, she has come forward with no evidence to rebut defendant's legitimate nondiscriminatory reason for not notifying her of the April 7, 1997 job posting—it was under no obligation to do so. Accordingly, given plaintiff's failure to establish a prima facie case of disability discrimination under the ADA or KAAD, and her failure to come forward with evidence of pretext, the court finds summary judgment on plaintiff's disability discrimination claims under the ADA and KAAD is appropriate. The court grants defendant's motion for summary judgment on plaintiff's remaining ADA and KAAD disability discrimination claims.

● **Retaliation Under the ADA / KAAD**

● **Applicable Law**

■ The ADA provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b). To establish a prima facie case of retaliation under the ADA, an employee must prove the following elements: (1) that she engaged in an activity protected by the statute; (2) that she was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and (3) that there was a causal connection between the protected activity and the adverse action. *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir.2001) (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir.1999)).

Similar to claims for disability discrimination, if plaintiff establishes a prima facie case of retaliation under the ADA or

---

**5.** Although plaintiff alleges in her complaint that she "would have left the candidate bank on May 1, 1997," (Pl.'s Compl. at ¶ 19), she has failed to controvert defendant's asserted facts. In the summary judgment context plaintiff may not simply rest on her pleadings, but instead must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Adler*, 144 F.3d at 671.

KAAD, the burden then shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action. *Id.* If the employer satisfies this burden of production, then, in order to survive summary judgment on her retaliation claim, the plaintiff must come forward with sufficient facts to establish a genuine issue of material fact regarding whether the employer's articulated reason for the adverse action is pretextual. *Id.*

● **Discussion**

■■ Plaintiff's claims of retaliation under the ADA and KAAD are not clearly stated. Plaintiff appears to allege that defendant retaliated against her by deciding not to notify her of the April 7, 1997 job posting. Plaintiff further appears to allege that this decision of defendant's was based on her filing of a claim for worker's compensation on December 26, 1995. Defendant contends plaintiff cannot establish a prima facie case of statutory retaliation.

Even if plaintiff could establish a prima facie case of retaliation under the ADA or KAAD, the court finds that plaintiff has failed to set forth any evidence of pretext. Under the analysis above, the court finds that plaintiff has not rebutted defendant's legitimate nondiscriminatory reason that it had no obligation to inform plaintiff of the April 7, 1997 job posting. Although plaintiff need not prove her case at this juncture, to survive summary judgment on these statutory retaliation claims, she must set forth evidence sufficient to establish that a genuine issue of material fact exists regarding the pretextual nature of defendant's proferred reasons. *Adler*, 144 F.3d at 671. Plaintiff may not simply rest upon her pleadings to satisfy this standard. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. As noted above, plaintiff has come forward with no evidence to establish a genuine issue of material fact regarding whether defendant's proferred reason is pretextual. Accordingly, summary judgment on plain-

tiff's retaliation claims under the ADA and KAAD is appropriate. Defendant's motion is granted on this basis.

● **State Law Retaliation Claim**

Following the court's finding on defendant's waiver argument, plaintiff's claim of retaliation under Kansas state law remains to the extent it arises from defendant's alleged failure to notify plaintiff of the April 7, 1997 job posting.

■■ Prior to examining the arguments set out by defendant, the court notes that defendant has not addressed whether plaintiff's claim of retaliation for failure to notify her of the April 7, 1997 job posting is actionable under Kansas law. Generally, Kansas courts have limited a cause of action for retaliation in violation of public policy to circumstances where an employee is discharged or demoted in retaliation for exercising rights under worker's compensation laws and circumstances where an employee is discharged for reporting or threatening to report an employer's unlawful behavior. *Brigham v. Dillon Cos.*, 262 Kan. 12, 20, 935 P.2d 1054, 1059–60 (1997); *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 176–77, 872 P.2d 252, 262 (1994). The court assumes, without deciding, that plaintiff has stated a cognizable claim under Kansas law under the rationale set out in *Brigham*.

■■ The Kansas courts have adopted the *McDonnell Douglas* burden-shifting framework for analyzing retaliation cases. *Sanjuan v. IBP, Inc.*, 275 F.3d 1290, 1294 (10th Cir.2002). Therefore, plaintiff must establish a prima facie case that raises a rebuttable presumption of retaliatiory intent by showing that:

(1) he or she filed a claim for workers' compensation benefits, or sustained an injury for which he might assert a future claim for such benefits; (2) that the

employer had knowledge of plaintiff's compensation claim, or the fact that he had sustained a work-related injury for which the plaintiff might file a future claim for benefits; (3) that the employer terminated the plaintiff's employment; and (4) that a causal connection existed between the protected activity or injury, and the termination.

*Id.* at 1298. Once plaintiff has established the prima facie case, the burden shifts to defendant to articulate a legitimate non-discriminatory justification for the retaliatory action. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1116 (10th Cir.2001). The burden then shifts back to the plaintiff to establish pretext. To establish pretext in a retaliation claim, the plaintiff must show " 'that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason.' " *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998) (quoting *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1535 (10th Cir. 1995)). The plaintiff's burden, as noted above, "is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief." *Morgan*, 108 F.3d at 1321 (citation omitted).

Here, defendant contends that plaintiff cannot establish a prima facie case of state law retaliation and cannot establish that its proffered reasons are pretextual. The court agrees. As set forth above, the court finds that even if plaintiff could establish a prima facie case of state law retaliation, she has failed to set forth any evidence of pretext. Defendant's legitimate nondiscriminatory reason that it had no obligation to inform plaintiff of the April 7, 1997 job posting has not been rebutted. Although plaintiff need not prove her case at this juncture, to survive summary judgment on this state retaliation claim, she must set forth evidence

sufficient to establish a genuine issue of material fact exists regarding the pretextual nature of defendant's proffered reasons. *Adler*, 144 F.3d at 671. Plaintiff may not simply rest upon her pleadings to satisfy this standard. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Because plaintiff has come forward with no evidence to establish a genuine issue of material fact regarding whether defendant's proffered reasons are pretextual, the court finds summary judgment on plaintiff's state law retaliation claim is appropriate. Defendant's motion is granted on this basis.

● **Defendant's Motion to Dismiss**

Given the court's ruling on defendant's motion for summary judgment, the court finds defendant's motion to dismiss and the relief requested therein are rendered moot.

● **Defendant Nellcor's Counterclaim**

▮ Following the court's rulings granting judgment to defendant on plaintiff's claims, the only claim that remains pending in this action is defendant's counterclaim asserting breach of a severance agreement against plaintiff. In its counterclaim, defendant seeks damages equal to the amount of severance benefits paid to plaintiff, its attorneys' fees and costs. In its motion for summary judgment, defendant did not seek the entry of judgment in its favor on this counterclaim. The court may, in its discretion, exercise supplemental jurisdiction over defendant's breach of severance agreement claim if it is sufficiently related to a pending claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a). Plaintiff asserted claims of discrimination and retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, over which this court has original jurisdiction under 28 U.S.C. § 1331. Plaintiff's claims arose out of her employment with defen-

dant Nellcor. Defendant's counterclaim also arises out of this employment relationship.

However, the court need not exercise supplemental jurisdiction and may decline to do so under § 1367(c) if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Here, the court has dismissed plaintiff's federal ADA claims, over which it had original jurisdiction. Consequently, this court, in its discretion, declines to exercise supplemental jurisdiction over defendant's state law counterclaim. Therefore, defendant's counterclaim is dismissed for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1367(c).

### • Order

IT IS THEREFORE ORDERED that the court's March 23, 2001 order (Doc. 105) granting defendant's summary judgment motion and its March 27, 2001 order (Doc. 107) entering judgment against plaintiff are vacated.

IT IS FURTHER ORDERED that defendant Nellcor Puritan Bennett's Motion for Summary Judgment (Doc. 87) is granted. Judgment shall be entered in favor of defendant Nellcor and against plaintiff. Plaintiff's case is dismissed in its entirety.

IT IS FURTHER ORDERED that defendant Nellcor Puritan Bennett's Motion to Dismiss for Failure to Comply with the Court's Order to Mediate (Doc. 99) is rendered moot.

IT IS FURTHER ORDERED that defendant Nellcor's counterclaim is dismissed for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1367(c).

IT IS SO ORDERED. Dated this day of January 2003, at Kansas City, Kansas.